HENRY B. GOODENOUGH *vs.* FRANK N. THAYER & another.

Suffolk. Nov. 9, 1880; Nov. 9, 1881. — Jan. 5, 1882. ALLEN, J., absent.

A written agreement, purporting to be between T., agent of the steamship A., of the one part, and G. of the other part, and signed by " T. agent " and G., provided that the party of the first part let to the party of the second part a certain space on the steamship for the conveyance of cattle; that the steamship should put on board a condenser capable of supplying the cattle with water; that the captain was to allow his officers and crew to render assistance in case of emergency, without liability to the ship-owner; that the attendants of the cattle were to have passages free of charge, but without liability to the ship-owner; and that the steamship was to have a lien on the cattle for the freight. *Held,* that the agreement was the contract of the steamship and her owners, and not of T. personally.

CONTRACT against the members of a partnership doing business under the firm name of Thayer & Lincoln. The declaration alleged that the defendants entered into a written contract with the plaintiff, a copy whereof was annexed and is printed in the margin,* for the conveyance of certain live sheep and hogs

* " BOSTON, Aug. 15, 1878. It is hereby mutually agreed between Thayer & Lincoln, agents of the steamer Atrato, at Boston, on the one part, and H. B. Goodenough on the other part, that the said party of the first part agree to let to said party of the second part a space upon the upper deck of the said steamer Atrato, for the conveyance of sheep and hogs, of not more than average size, from Boston to London, for which latter port she is intended to sail, Aug. 24, 1878, for the sum of eight shillings and three pence sterling for each and every head taken on board. Party of first part to furnish fittings for said stock, which are to be put up as customary upon the steamers for which Thayer & Lincoln are agents, and which are hereby approved by party of second part. Steamer agreeing to put on board a condenser capable of supplying the stock with water in sufficient quantities. And

from Boston to London; that, by the terms of the agreement, the defendants were bound to see that the sheep and hogs were supplied with suitable fittings to perform said voyage and with a sufficient quantity of pure water to support life and to keep the sheep and hogs in good health and condition during the voyage; alleged delivery to the defendants, and a breach of the contract in not supplying sufficient water, whereby a large number of the sheep and hogs died during the voyage. The declaration also contained a count in tort against the defendants as common carriers.

At the trial in the Superior Court, before *Aldrich*, J., the plaintiff put in evidence tending to show a breach of the contract and a loss of sheep and hogs caused thereby. The defendants admitted signing the contract declared on; and put in

---

the party of second part agrees to furnish, at such time as may be required by the party of the first part, the said stock, sufficient in number to fill the space provided, and to find food and attendance in all respects suitable for said stock, and shall take all responsibility in the shipping, carriage and discharging of the stock, and for the accidents, damages and mortality that may happen to them from whatever cause, arising in loading, in discharging, and during the voyage. The captain, in case of emergency, to allow some of his officers or crew to render all the assistance they can in the securing of stock or provender, which may, from any stress of weather, or other unavoidable cause, have got adrift; such assistance to be gratuitous, and without liability to ship-owner. The attendants of the stock not to exceed in number, to be provided with passages out and return free of charge, but without liability to ship-owner. The party of the second part agrees to pay the said sum of eight shillings and three pence sterling to David Brown & Co. for each and every head taken on board, on the arrival of the steamer at London, and before the cattle are taken ashore; the steamer having a lien upon the stock until payment. In all other respects the terms and conditions of the printed bill of lading hereto annexed are to apply and form part of this contract. Thayer & Lincoln, *Agents.* Henry B. Goodenough."

Annexed to this contract was a blank printed form of a bill of lading, by which the "ship-owner's responsibility" was to cease on delivery at London; by which certain perils were excepted, whether arising from the negligence of persons "in the service of the ship-owner or not;" and which contained various other provisions in relation to the liability and duty of the ship-owner; and concluded as follows: "In witness whereof the master or agent of the said ship both affirmed to bills of lading, all of this tenor and date, the one of which bills being accomplished the others to stand void.

"——— ———, for Agents."

evidence that the sheep and hogs were shipped under a bill of lading similar in form to that annexed to the contract, which contained the words in writing " as per contract," and the words " shipped on deck at shipper's risk. All loss or damage arising from any cause whatever to be borne by the shipper."

The defendants asked the judge to rule that the agreement declared on was the agreement of the owners of the steamship, and not that of the defendants. The judge ruled otherwise. The jury returned a verdict for the plaintiff ; and the defendants alleged exceptions. The case was argued at the bar in November 1880, and reargued in November 1881.

*L. S. Dabney*, for the defendants.

*E. D. Sohier & H. M. Rogers*, for the plaintiff.

ENDICOTT, J. There can be no question that the bill of lading, under which the plaintiff shipped certain sheep and hogs on board the steamship Atrato, and the special agreement of August 15, 1878, signed by the plaintiff and by the defendants as agents, are to be taken and construed together as one contract. It is true, a blank bill of lading is annexed to the special agreement, and made part thereof, but the written portions of the bill of lading actually signed are immaterial as bearing on the construction of the special agreement ; and the principal question to be decided in the case is, whether the defendants, by the terms of the special agreement thus made part of the bill of lading, rendered themselves personally liable to the plaintiff. This question must be determined, as in all other cases, by an examination of the paper itself. *Carpenter* v. *Farnsworth*, 106 Mass. 561. We are of opinion that, upon the face of the agreement, it appears to be the contract of the steamship Atrato and her owners, and not the contract of the defendants personally.

The defendants in the body of the agreement disclose their principal, for they describe themselves as agents of the steamship Atrato, and they do not sign the instrument personally, but as agents. The case does not fall, therefore, within that class of cases, cited by the plaintiff, where the instrument does not disclose the name of the principal ; *Winsor* v. *Griggs*, 5 Cush. 210 ; *Stackpole* v. *Arnold*, 11 Mass. 27 ; nor within the other class of cases cited, where, although in the body of the instrument it appears, or is to be inferred, that the party signing is

agent, or is acting in behalf of other persons, the instrument itself is signed by his own name only. *Simonds* v. *Heard,* 23 Pick. 120. *Tippets* v. *Walker,* 4 Mass. 595. *Packard* v. *Nye,* 2 Met. 47. *Bank of British North America* v. *Hooper,* 5 Gray, 567. *Morrell* v. *Codding,* 4 Allen, 403. *Parker* v. *Winlow,* 7 El. & Bl. 942. In these cases it was held that there was a personal undertaking by the defendant.

Nor can it be said that the recitals in the body of the instrument, that the defendants were agents of the steamship Atrato, and their signature thereto, describing themselves as agents, were mere *descriptio personarum,* as in *Seaver* v. *Coburn,* 10 Cush. 324; *Fiske* v. *Eldridge,* 12 Gray, 474; *Tucker Manuf. Co.* v. *Fairbanks,* 98 Mass. 101; for the agreement contains express stipulations on the part of the steamship Atrato, and express provisions touching the liability of her owners. As where it recites, "steamer agreeing to put on board a condenser capable of supplying the stock with water in sufficient quantities;" "the captain, in case of emergency, is to allow some of his officers or crew to render all the assistance they can in the securing of stock or provender, which may, from stress of weather, or other unavoidable cause, have got adrift; such assistance to be gratuitous, and without liability to ship-owner." By the agreement the plaintiff is to "find food and attendance in all respects suitable for said stock," and the agreement provides, "the attendants of the stock not to exceed      in number, to be provided with passage out and return free of charge, but without liability to ship-owner." The freight is not payable to the defendants, but is payable in London before the cattle are taken ashore, "the steamer having a lien upon the stock until payment." These and other provisions of similar character relate to the duties and liabilities of the owners of the steamship, and to the carriage and care of the stock, on the voyage, over which the defendants, as agents of the steamship in Boston, have no control, nor have they any interest therein.

Taking all the provisions of the special agreement together, it appears that it was not the intention of the parties that the defendants should be bound personally, but that it was the intention to bind the ship-owners. And the intention is so plainly

apparent that it is not to be controlled by the words "agents of the steamer Atrato," instead of for the steamer Atrato. *Tucker Manuf. Co.* v. *Fairbanks, ubi supra.* This view is strengthened by the fact, that the printed parts of the bill of lading, upon which there is no question of the owner's liability, are made part of the special agreement. *Fuller* v. *Hooper,* 3 Gray, 334. *Lyon* v. *Williams,* 5 Gray, 557. *Slawson* v. *Loring,* 5 Allen, 340. *Carpenter* v. *Farnsworth,* 106 Mass. 561. *Cutler* v. *Ashland,* 121 Mass. 588. *Whitney* v. *Wyman,* 101 U. S. 392. *Mahony* v. *Kekulè,* 14 C. B. 390. *Green* v. *Kopke,* 18 C. B. 549. *Fairlie* v. *Fenton,* L. R. 5 Ex. 169. *Hayn* v. *Culliford,* 3 C. P. D. 410. *Blanchard* v. *Page,* 8 Gray, 281.

*Exceptions sustained.*