## STEAMSHIP BULGARIAN COMPANY *vs.* MERCHANTS' DESPATCH TRANSPORTATION COMPANY.

Suffolk. March 15, 16; September 3. — 8, 1883.

A corporation engaged in transporting merchandise by railway made a contract, by its agent, W., with the agent of the owner of a steamship, for the shipment of grain, and W. sent the agent of the steamship a paper headed "Memorandum of freight engagement," and signed by W. as agent, which contained the name of the steamship, the date of sailing, the number of bushels, the rate of freight, and the words, "For account of B. Engaged by W. agent." The grain not being ready, W. and the agent of the steamship orally agreed that the contract for the grain should be transferred to another steamship, owned by a different person, but running in the same line and having the same agent. *Held,* in an action by the owner of the second steamship against the corporation, for breach of the contract to furnish the grain, that by the terms of the memorandum the defendant was the contracting party, and not the person on whose account it

was shipped, although, by the course of dealing between the parties, it was the practice to carry grain, on one bill of lading, from the place where it was delivered to the defendant to the place to which it was carried by the steamship. *Held, also,* that the defendant was not entitled to a ruling that, on all the evidence, the contract for the delivery of the grain to the owner of the steamship was the contract of the shipper, and not that of the defendant.

CONTRACT to recover damages for the breach of a contract by the defendant to deliver 20,000 bushels of grain to the steamship Bulgarian, to sail from Boston for Liverpool on March 13, 1881, which contract the declaration alleged the defendant made in consideration of the facts that it had failed to deliver the same grain to the steamship Illyrian, to sail on February 19, 1881, in accordance with its contract so to do, and that cargo intended for the Bulgarian had been laden on board of the Illyrian to take the place of the grain which the defendant failed to supply. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence tending to show that it was the owner of the steamship Bulgarian, which was one of a line of steamers known as the Leyland line, which had for a number of years prior to the making of the alleged contract been engaged in carrying merchandise between Boston and Liverpool, sailing from Boston weekly, and that the agents for said steamships at Boston were the firm of Thayer and Lincoln; that the defendant was engaged in carrying merchandise from various parts of the Western States to Boston; that at the time of the making of the alleged contract, and for a number of years prior thereto, Joseph E. Woods was foreign freight agent of the defendant company at Boston, with authority to act for the defendant in making freight engagements for the shipment of merchandise from Boston to Liverpool; and that a great deal of grain had been carried from Boston to Liverpool in the ships of the Leyland line pursuant to engagements made between Woods and the firm of Thayer and Lincoln, the grain being brought to Boston from various points in the West by the defendant; that such grain was carried from the starting-point in the West to Liverpool on one bill of lading, issued at the starting-point by the defendant and the plaintiff jointly, and in the names of both, no other bill of lading being issued by the plaintiff for such grain or merchandise, and that the bills of lading were signed

by agents of the defendant company at the point of shipment, and were in a form which permitted the defendant to forward the grain from Boston by any steamship or line of steamships; that the freight to be received by the steamships for the carriage from Boston to Liverpool of such grain was always agreed upon between Woods and Thayer and Lincoln for the ships of the Leyland line; that the bill of lading binds the steamship after the grain is received, and the bill of lading was recognized when accepted by the ship, and such were its terms; that on January 29, 1881, Woods called on Lincoln, the Boston agent of the steamship Illyrian, one of the Leyland line, but not owned by the plaintiff, and said that he had an order for a large quantity of grain, that room for part of it had already been engaged, and wanted Lincoln to take a lot of 25,000 bushels, and offered four and a half pence per bushel of sixty pounds as the freight rate; that Lincoln, after some hesitation, reluctantly agreed to take 25,000 bushels of the grain at that rate, to be shipped from Toledo within twelve days for the Illyrian, to sail on February 19; and that on the same day Lincoln received a paper, partly printed and partly written, which paper was copied into the books of Thayer and Lincoln, and was their only written evidence of the contract as to the grain, and a copy of which is printed in the margin * (the written portion being printed in italics).

---

\* "Contract No. 580.

"Merchants' Despatch Transportation Co.,
Boston, Jan. 29, 1881.

"Memorandum of Freight Engagement.

"*Leyland.*                                         Line.

For steamer *Illyrian.*
To sail *Feb.* 19.
For *Liverpool.*
Quantity, 25,000 *bushels.*
Merchandise, *corn.*
Rate, 4½*d.* per 60 lb.
From *Toledo within* 12 *days.*
For account of *G. B. Rae.*
Engaged by *J. E. W.*, agt.
Under authority given.

*"February shipment guaranteed."*

"Jos. E. Woods,
Foreign Freight Agent."

Lincoln on his direct examination produced this paper, identified it, and read it to the jury. He also testified that in similar cases such a writing was always made by Woods and sent to him, and that the writing was in·Woods's handwriting, which was not denied; that afterwards, about the time they wanted the grain for the Illyrian, Woods told him that he could not get the grain here in time, and asked him to get other grain if he could; that he got other grain for that steamship, and extended the time for the performance of the contract.

The plaintiff's evidence, including the testimony of Lincoln, tended to show that the words "February shipment guaranteed," written in the margin of the memorandum, were not in the contract when the same was first written and sent by Woods to Thayer and Lincoln, but were added when the engagement was changed to the Bulgarian, and that the paper had been in the possession of Thayer and Lincoln from the time when it was first sent to them.

The plaintiff further introduced evidence tending to show that Lincoln was the Boston agent of the plaintiff, as well as of the owners of the Illyrian, and that, in consequence of the failure of the grain to arrive in season to go by the Illyrian, it was agreed by Woods that it should be delivered in Boston to be carried in the Bulgarian, which was advertised to sail on March 12. Before that agreement was made, Lincoln had been informed that the grain was delayed at Toledo by a flood, so that it could not be loaded into the cars for transportation.

Lincoln testified that he had no recollection of seeing any telegram, but might have seen one at the first interview with Woods about this grain; that Rae's name was not mentioned, either at that time or when the contract was changed to the Bulgarian, or in any of the negotiations respecting the contract or the delivery of the grain; that he had heard of Rae as a grain-dealer in New York, but had never seen him, and was not acquainted with him; that he had never heard of him as a carrier of grain; and that he did not look to Rae at all, but looked to the defendant for the grain.

The defendant contended that in making the original engagement with the Illyrian, as well as in all subsequent negotiations as to what ship the grain should be carried by, and as to the

time of delivery in Boston, it acted as agent or middleman between G. B. Rae, the owner of the grain, and the agent of the ships, and not as a principal, and that it did not assume any responsibility to the owners of the Illyrian, or to the plaintiff, as to the time of the arrival or delivery of the grain to the steamer; and offered evidence that on January 29, 1881, Woods, its agent, received the following telegram: "New York, 29, 1881. To Jos. E. Woods: Offer you fourpence halfpenny sixty pounds for fifty thousand bushels February shipment by steam to Liverpool, grain to be shipped from Toledo within next twelve days. Reply immediately and give me refusal fifty thousand more February shipment at same price for reply to-day. Can't use March room, having no orders for that shipment; try to get in at fourpence farthing. G. B. Rae." That, on receipt of this telegram, Woods went to the steamship companies to get them to take the grain for Rae, first to the Allan line, which took 25,000 bushels, and then to Lincoln, the plaintiff's agent, to whom he showed or read the telegram, so that he knew all about the grain; that Lincoln agreed to take 25,000 bushels the 19th of February by the Illyrian; that Woods then returned to his office, and immediately answered Rae's telegram, and wrote and sent to Lincoln the memorandum, hereinbefore given, as he always did in such cases; that the words "February shipment guaranteed" were written in the margin at that time, and because Rae's telegram had specially emphasized that provision.

Woods testified that he had no authority other than said telegram to make any contract binding on Rae to furnish grain for shipment at Boston, and that he did not tell Lincoln that he was not acting for the defendant; that he had not made five hundred and eighty contracts for shipment of grain for G. B. Rae; that he entered the contracts as he made them in the books kept by him as agent of the defendant company, and numbered them from 1 up to 1000, without regard to the steamer or line by which the grain was to be carried, and without regard to the person who owned or shipped the grain; and that the number 580 given to this contract was its number in such series so entered.

It was in evidence from both sides, that, if the grain had been brought for either steamship, a bill of lading, according to

the usual course of business, as hereinbefore stated, would have been issued at Toledo for its transportation from Toledo to Liverpool, and that the steamship would not have issued any other bill of lading; that in engagements of freight similar to this, through the defendant, such a memorandum as that hereinbefore set out was always given, with the blanks filled to suit the occasion; that they were preserved for a year or two on the files of Thayer and Lincoln, and were their only written evidence of the contract, and to determine its terms they must have referred to the memorandum.

The plaintiff further put in evidence two letters written by Thayer and Lincoln and received by Woods, and a letter written by Woods in reply to the same.

The first letter, dated March 10, 1881, notified Woods that the Bulgarian was ready to receive grain, called for "the fulfilment of your contracts with the Leyland line," stated that they would be satisfied with the immediate delivery of 20,000 bushels, and that "any loss sustained by the steamer in consequence of your failure to perform the contract will be a claim upon the company you represent."

The second letter, addressed to Woods, was dated March 11, 1881, and was as follows: "As we have received no reply to our requisition for grain for steamer Bulgarian, we shall be compelled to engage some grain to supply us with necessary weight. We shall claim of your company any loss that may be incurred by the steamship in consequence of non-fulfilment of contract."

On the same day, Woods sent the following letter to Thayer and Lincoln: "The grain described by our memorandums of ocean engagements Nos. 580 and 631 is not yet shipped from Toledo. The engagements, as you are well aware, were made in behalf of the Leyland Line and Merchants' Despatch Transportation Company, severally and jointly. Your steamers constitute a part of the through line from Toledo to Liverpool, over which this parcel of corn is to come. The detention of the grain at point of shipment was caused by the freshet at Toledo on or about the 9th of February, which freshet was an interposition of Divine Providence, which could not be foreseen or prevented, and from the consequences of which we must suffer jointly with you. In fact, relatively, our loss is in the proportion

of 28.29 to 13.75, as we both lose the carriage of the property, and these figures represent what our respective earnings would have been. I cannot recognize any liability to provide other grain in place of the grain which we engaged for you and ourselves."

The defendant put in evidence a bill sent by Thayer and Lincoln to Woods upon the sailing of the Bulgarian, in March, 1881, in which damages were charged and claimed against the defendant for alleged breach of contract by failure to deliver the grain "as per the M. D. T. Co.'s Contract No. 580," and Woods testified, on cross-examination, that he did not send this bill to Rae, or inform him of the claim.

The plaintiff put in evidence the following telegram, which Woods testified he sent to the agent of the defendant in Toledo, after telegraphing to Rae and sending to Thayer and Lincoln the memorandum, as hereinbefore stated: "Boston, Jan. 31, 1881. I have engaged 84,000 acct. G. B. Rae, to be shipped by E. A. Williams & Bro., on contracts as follows: 579, 25,000 bushels for Allan line, in February; 580, 25,000 bushels for Leyland steamer, February 19th, and 582 for 34,000 bushels for Warren steamer, February 19th, all for Liverpool on basis $4\frac{1}{2}$ pence. I want you to work in concert with Baldwin, and receive any part of the whole and forward with quickest possible despatch."

On this evidence, which was the whole evidence as to the making of the contract, the defendant asked the judge to rule that the paper No. 580 was the contract, and disclosed on its face, whether taken by itself or considered in the light of the attendant circumstances, that G. B. Rae was the principal, and that the defendant was only his agent. The judge ruled that the paper was not, and was not intended to be, a complete contract, but only a memorandum of a previous contract, and that the paper was evidence that the defendant was a principal, and not an agent, and that the words "for account of G. B. Rae" were descriptive of the goods, and did not indicate that the contract was with Rae.

The defendant further asked the judge to rule, and to instruct the jury, that the memorandum No. 580 did not make a contract nor show a contract on the part of the defendant with the

plaintiff, nor with the owners of the steamer Illyrian, nor with anybody else, to have and deliver the grain mentioned in the memorandum, nor any grain, to the steamer Illyrian, its owners or agents; that, on the evidence, there was no undertaking by the defendant to deliver grain to the Illyrian, which would be the basis of an action against the defendant in case of non-delivery; that, on the evidence, the contract for the delivery of grain was the contract of Rae, and not of the defendant.

These instructions the judge refused to give, and instructed the jury on this part of the case as follows: "On the question whether the agreement was in fact made, as contended by the plaintiff, a memorandum or ticket given in connection with the first contract with the Illyrian has been introduced, and the court has been asked to determine the construction of that paper as matter of law. Upon the construction of that paper I have to say, as matter of law, that the paper does not purport to be and is not itself the contract between the parties, but is merely a brief memorandum relating to the contract, which may be considered as evidence of such contract. It is a memorandum of an undertaking by the Merchants' Despatch Transportation Company for itself, and not as the agent of G. B. Rae. This evidence is not conclusive what the contract was in fact between the parties, but the memorandum is evidence to be considered with all the other evidence in determining what the undertaking was and by whom it was made. The contract on which the plaintiff relies, and which he must prove, is to deliver the grain for shipment by the Bulgarian. Whatever the contract was in relation to the Illyrian, it is of no importance in this action, except as it assists in determining what the contract in relation to the Bulgarian was. No contract in relation to the Illyrian, and no breach of it, gives any right to recover in this action."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. L. Soule & F. H. Gillett*, for the defendant.

*L. S. Dabney*, for the plaintiff.

COLBURN, J. There was no substantial controversy in this case that the defendant, a corporation engaged in transporting merchandise by railway from different points in the West to

Boston, by its agent Woods, on January 29, 1881, made a contract with the owners of the steamship Illyrian, one of the Leyland line of steamships, running between Boston and Liverpool, by Thayer and Lincoln, agents of the steamships of that line, for the shipment of 25,000 bushels of corn from Boston to Liverpool, by said steamship, which was to sail on February 19, 1881; that, the corn not being ready for said steamship, it was agreed between Woods, as agent for the defendant, and Thayer and Lincoln, as agents for the steamships, that the contract for the corn should be transferred to the Bulgarian, another of the steamships of said line, which was to sail in March, 1881, freight which was designed for the Bulgarian being shipped by the Illyrian in place of said corn, and the corn shipped by the Bulgarian in place of said freight.

The defendant having failed to furnish the corn for the Bulgarian, this action was brought to recover damages for such breach of contract. There being no controversy that the terms of the contract with the Bulgarian were substantially the same as of that with the Illyrian, except as to the time of shipment, the memorandum of "freight engagement" with the Illyrian was used in evidence at the trial to show the terms of the contract, and the capacity in which the defendant acted, there being no dispute that it acted in the same capacity in making both contracts.

The contention of the plaintiff was, that the contract was made with the defendant; and the contention of the defendant was, that the contract was made by the plaintiff with one Rae, through the defendant, acting as middleman, or as his agent. There was no claim that Woods was Rae's agent.

The exception relied upon by the defendant is to the ruling of the judge, as matter of law, that the paper headed " Contract No. 580 " is a memorandum of an undertaking by the defendant for itself, and not as the agent of G. B. Rae.

Whether this paper is treated as a contract, or only as a memorandum of a contract, is immaterial, in the legal construction of its terms. The question at issue is the intention of the parties, to be gathered from the memorandum itself and the attending circumstances. *Green* v. *Kopke*, 18 C. B. 549. *Goodenough* v. *Thayer*, 132 Mass. 152, and cases cited.

We are of opinion that, by the terms of the memorandum, the defendant was the contracting party. The defendant does not purport to act as agent for Rae, and though Rae is mentioned as the owner of the corn, or the person for whose account the contract was made, he is not mentioned in such manner as to show that the defendant did not intend to be the contracting party. The fair inference from the language of the memorandum, considered in the light of the undisputed attending circumstances, is that the defendant had made an agreement to transport corn from Toledo to Liverpool, and, in carrying out this agreement, must arrange with some line of steamships for the ocean transportation, and that the memorandum was made for that purpose.

If it was clear that the defendant was agent for Rae, it might contract in such form as to bind itself, though the principal was disclosed. *Jones* v. *Littledale*, 6 A. & E. 486. Story on Agency, § 269.

The contracts with the two steamships were different, though the terms of both were substantially alike. The owners were different, though they had the same agents. The contract with the Bulgarian was oral. The judge rightly refused to rule as requested, if the defendant's request is to be so construed, that, on all the evidence, the contract for the delivery of the grain was the contract of Rae, and not that of the defendant. There were facts of some significance in dispute, one being the time when the words " February shipment guaranteed " were written on the memorandum. But we do not understand that the defendant relies upon the exception to this refusal.

In the opinion of a majority of the court, the entry must be

*Exceptions overruled.*