THE MISSOURI PACIFIC RAILWAY COMPANY v. ELIZABETH PEREGOY, *as Administratrix of the Estate of James W. Peregoy, deceased.*

1. NEGLIGENCE *of Employé, When Negligence of Employer.* Where an ignorant boy, seventeen years old, an apprentice in a machine shop, was directed by the foreman in charge to obey the call and direction of W., another employé, engaged in drilling an engine frame, which work required a skilled mechanic to safely handle; and W., being also an unskilled apprentice, negligently removed the clamp that was provided to hold the frame from falling, and in that position attempted to move the engine frame, and directed the boy to move the trestle further under the frame, when it fell and killed the boy: *Held,* That W. and the boy were not fellow-servants, and that the negligence of W. was the negligence of the employer.

2. EMPLOYÉ, *Killed; Employer Held Liable for Damages.* Where such foreman directed an unskilled apprentice to do· work that requires a skilled mechanic to perform, and directed him to call to his assistance other employés also ignorant of said work; and said work was dangerous, and such danger was known to the foreman, and was unknown to such employés, and no notice was given to them of the danger, and the foreman failed to give them instructions which, if given and followed, would have prevented the accident, and one was killed while at said work, the employer is liable in an action for damages.

*Error from Labette District Court.*

ACTION begun October 4, 1883, by *Elizabeth Peregoy*, as administratrix of the estate of James W. Peregoy, deceased, against *The Missouri Pacific Railway Company*, to recover damages for the killing of her son, the said James W. Peregoy, who had been an apprentice employed in the defendant's railway machine shops at Parsons, Kansas, and had been so employed for about two months. The petition substantially alleged, among other things, that on June 19, 1883, one Gottlieb Wirth, who was also an apprentice employed in said shops, was drilling an engine frame, a large frame of iron weighing about two thousand pounds; that the frame was standing on its edge, one end resting on the drill-plate and the other on a trestle; that it was necessary for Wirth to move the frame, and for that purpose he called Peregoy and another employé to assist him in so doing, and also to move the trestle under the frame nearer the drill; that Wirth and the other person attempted to lift the frame with a bar, and Wirth directed Peregoy to move the trestle, which he attempted to do; that the frame fell and struck Peregoy, and killed him instantly. The petition further alleged that Wirth was directed by one Wood, who was foreman in that part of the shops and had charge of the machine operated by Wirth, to call on Peregoy for help in moving the frame, and Peregoy was directed to assist whenever called upon; that one Haines was master mechanic, and in general charge of the shops; that both Wirth and Peregoy were boys about seventeen years old, and had never worked in machine shops, except in defendant's for a short time; that the work on this frame was the only experience each had ever had in handling engine frames or other heavy pieces of iron, and that neither was instructed by persons in charge of the work that the handling of said frames was dangerous, or that it required great care and attention to avoid accidents; that at the time the frame fell the clamp provided to hold the frame had been removed by Wirth; that both Haines and Wood had been at the drill while Worth was

drilling, when the clamp was not fastened to hold the frame, and made no direction to Wirth about fastening the clamp on to secure the frame from falling.

Trial at the May Term, 1885. The jury rendered a verdict for the plaintiff for $3,000 damages, and also made special findings of fact upon certain questions submitted by the parties to the action. New trial denied, and judgment for the plaintiff. The defendant brings the case here.

*David Kelso*, for plaintiff in error.

*Kimball & Osgood*, for defendant in error.

Opinion by CLOGSTON, C.: There is no substantial dispute in this case about the facts, but only as to the mixed questions of law and of fact. Plaintiff in error assigns many errors which we will try to take up in their order; but first we will say that many of the errors complained of are covered and cured by the general rule that where the findings of fact are consistent with each other and consistent with the general verdict, and are supported by some evidence, this court will not disturb or set aside the judgment founded thereon. This rule will dispose of the first error suggested by the learned counsel for the defendant, that there was an entire absence of evidence to support the finding of the jury "that it was necessary to remove the clamp to move the engine frame." On this question there was testimony: The evidence of Wirth that he could not move the frame where he wanted it without taking off the clamp ; Haines and Wood had been there a short time before when the clamp was off, and had made no order or direction about putting the clamp on; and Haines testified that by putting on another clamp on the other side of the frame the frame could have been moved without danger of falling; but nowhere was it shown that other clamps were furnished, or that Wirth was instructed about putting them on, while Wirth testified that no other clamp was furnished to put on the other side. There was some other evidence, tending to show that the frame could have been moved without

taking off the clamp; that by loosening the burr the frame could not fall, yet could be moved. To weigh and determine this testimony was the proper province of the jury. They having found in favor of the plaintiff, their finding will not be disturbed. (*American Bridge Co. v. Murphy*, 13 Kas. 35; *Railroad Co. v. Doyle*, 18 id. 58.)

The learned counsel also complains of this instruction given by the court to the jury:

"If Wirth was vested with full power to command the services of the deceased, and directed what he should do and how he should do it, and the whole management thereof and the direction of the deceased were vested in said Wirth, the defendant and superior servants reserving no discretion in themselves as to the direction of the work, then the act of Wirth is the act of the defendant and not of a fellow-servant."

In this instruction we see no error. The evidence in support of it was that Wirth was instructed to call to his assistance the deceased, and this direction was from Wood, the foreman, who was in the immediate control of the machinery and the men in that part of the shop; and Peregoy was directed to obey that call from Wirth and do as he was directed. This was the admitted relation between Wirth and the deceased. Wirth, under this direction from Wood, who was by the defendant placed in control of the men there at work, delegated a part of that authority to Wirth, and Wirth, under and by virtue of that authority, directed the deceased to move the trestle, in doing which he lost his life. As to the liability of the employer, it made no difference if Wirth knew that the clamp ought to be put on before attempting to move the trestle: if he did know this and neglected and omitted doing so, such negligence was the negligence of the employer. We concede the general rule to be that the negligence of a fellow-servant is one of the risks assumed by the employé, and for which the employer is not liable; but there are exceptions to this general rule, and where the employer places an employé under the control and direction of another, and the latter, in the exercise of the

1. Negligence of employe, when negligence of employer.

authority so conferred, orders the former into a place of un-usual danger, and thus exposes him to extraor-dinary peril, of the existence and extent of which he is not advised, the master is liable; and we think this case comes within the exceptions to the general rule. Here the employer placed deceased under the direction and control of a co-laborer, and was ordered by him to move a trestle, to do which would place him under the engine frame, a place of hazard and danger of which he was entirely igno-rant.

*2. Employe, killed; employer, held liable for damages.*

Mr. Justice VALENTINE, in *K. P. Rly. Co. v. Salmon,* says:

"These officers, agents or servants of the company upon whom such powers are bestowed are what we would designate as the higher or superior officers, agents or servants of the company. And these higher officers, agents or servants can-not with any degree of propriety be termed fellow-servants with the other employés who do not possess any such extensive powers and who have no choice but to obey such superior officers, agents, or servants. Such higher officers, agents, or servants must be deemed in all cases where they act within the scope of their authority, to act for their principal, in the place of their principal, and in fact to be the principal." (*K. P. Rly. Co. v. Salmon,* 14 Kas. 524; *Thompson, Adm'r, v. C. M. & St. P. Rld. Co.,* 4 McCr. 629, and cases cited; *Downing v. Allen,* 74 Mo. 13; *Railway Co. v. Ranney,* 37 Ohio St. 670.)

Counsel insists that this judgment cannot be sustained un-less the defendant knew that Wirth was incompetent; and on this point the court instructed the jury as follows:

"And for the purpose of determining whether or not it was known, it will be necessary for you to take into consideration what the agents and servants and employés of the defendant knew, or might have known by the exercise of ordinary and reasonable care on their part, from the number of times they were present when he was at work."

The evidence in support of this and under which this in-struction was given is, that Haines, the master mechanic, and Wood, foreman of that part of the shop, knew that Wirth was an apprentice and had never been put to such work before, and that he was a mere boy; that they had seen him

working that day, drilling on the engine frame in question with the clamp off; and the further evidence that it required a skilled mechanic to safely do the work so as to avoid accidents. The defendant, through its agents, Haines and Wood, did know that Wirth was unskilled, and with this knowledge placed him in charge of work which required skill and practice to successfully and safely handle. But counsel insists that this instruction comes within the case of *Solomon Rld. Co. v. Jones*, 30 Kas. 601. In that case damages were claimed for injuries received by an employé or servant by the breaking of a handle of a hand-car, and the evidence showed that on the day previous this car collided with another hand-car, and that these hand-cars were in use by a large number of hands; all except three were co-laborers. Some of these employés testi-. fied to having noticed the defect in the car after the collision, but this fact was not known by the railroad company, and was not brought to the knowledge of such agents as would make it knowledge of the company. The instructions, being general, were considered error; while in this case the language, although almost identical with the language in that case, is based upon a different state of facts. In this case the incompetency and inexperience of Wirth were well known to those to whom notice was notice to the defendant. So the fact also of the manner in which the engine frame was being handled being known by the master mechanic in charge, this knowledge was a notice to the defendant also. While it is true that one of the foremen of the blacksmith shop, an employé in a different department of the shops, a short time before the accident happened noticed the negligent manner in which Wirth was handling the frame, and called his attention to his negligence; yet this foreman had no authority in this part of the shop, and notice to him was not notice to the company. While this instruction was general in its nature, yet framed upon the facts in this case, we cannot see how the jury could be misled; the actual notice having been given and shown and brought home to such agents of the defendant, they were bound to take notice, and a failure to do so was the failure of the defendant.

Again, defendant complains of this instruction given by the court:

"The employer has no right to put the servant to task of the risks of which the servant is ignorant, unless notice is given to put the servant on his guard."

We see no error in this.   Here the defendant was putting Wirth to work for the first time drilling and handling an engine frame, with full knowledge that to do that work well and prevent accidents it required skilled and careful mechanics to do it.   Yet with this knowledge the defendant put an inexperienced boy seventeen years old to do it, and gave him the authority to demand the help of others of less experience than himself, and gave neither warning nor instruction that, if followed, would have prevented the accident.   The foreman knew, or might have known by the exercise of ordinary care, that this inexperience in handling such machinery would result in an accident; and it became the duty of the defendant to give warning to Wirth of the dangerous character of the work it was placing under his control, and give him instructions; but even having done this, we cannot see that this would excuse the defendant under the facts as shown and admitted in this case.   The query is: Can a railroad company put inexperienced and ignorant apprentices in places of great danger where the work can only be safely done by experienced and skilled mechanics, and give them warning and instructions, and after an accident say they took the risk incident to their employment with knowledge, and be thereby relieved from damages?  (*P. C. & St. L. Rld. Co. v. Adams,* 23 Am. & Eng. Rld. Cases, 408; *Parkhurst v. Johnson,* 50 Mich. 70; *Coombs v. New Bedford Cordage Co.,* 102 Mass. 572; *Railroad Co. v. Doyle,* 18 Kas. 58; *Yeaton v. Boston & Lowell Rly. Corporation,* 135 Mass. 421; *Sullivan v. India Mfg. Co.,* 113 id. 396.)

Again, counsel for the defendant complains that evidence of poverty and dependence of the next of kin was improperly admitted.   If the claim for damages by the plaintiff was

alone claimed for the services of deceased during his minority, this claim would be good, for in that event it would make no difference what her pecuniary condition was — her damages would be compensation for his earnings. But in this case plaintiff claimed that beyond this she relied upon the deceased for support beyond his majority. And to determine what damages she was entitled to recover, evidence was properly admitted to show her health, prospects and pecuniary condition, for without this proof no estimate could be made; and all evidence tending to show her need and prospects of receiving assistance from deceased, her dependence upon him, his ability to contribute, and his willingness to do so, were all proper to be submitted to the jury. We can see no other way in which she could show that she needed his assistance. Counsel will not contend that if the plaintiff was shown to be healthy and in good pecuniary circumstances, and not dependent, that the measure of her damages would be the same as under the circumstances shown in this case. (*Potter v. C. & N. W. Rly. Co.*, 21 Wis. 373; *A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kas. 443; *Ewen v. C. & N. W. Rly. Co.*, 38 Wis. 613.)

Again, counsel complains that the damages recovered are excessive. There is no fixed rule to determine compensation in case of death caused by the negligence of another; each particular case must stand on the facts of that case, and in every such case the jury may give such damages as they may think apportionate to the injuries resulting from such death. The rule as laid down in *Potter v. C. & N. W. Rly. Co.*, 22 Wis. 615, we think a correct rule in this case: "That courts will not set aside the verdict for excessive damages, unless they are so excessive as to be evidence of prejudice, partiality or corruption in the jury." After a careful consideration of this case, we cannot say the amount awarded was excessive.

In conclusion, while we have not noticed all the errors complained of, we think the substantial complaints have been examined, and we find no errors in the record which we can correct.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.