SLOAN SHIPYARDS CORPORATION ET AL. *v.* UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION AND THE UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

ASTORIA MARINE IRON WORKS *v.* UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION, REPRESENTING THE UNITED STATES, *v.* WOOD, TRUSTEE IN BANKRUPTCY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 308, 376, 526. Argued March 15, 16, 1922.—Decided May 1, 1922.

1. The Emergency Fleet Corporation, as originally created, had the powers of corporations under the laws of the District of Columbia, where it was incorporated, and was liable to be sued, there and

elsewhere, upon its contracts and for its torts, notwithstanding the fact that it was a federal agency and that its stock was taken entirely by the United States.   P. 565.

2. The extensive increase of the powers of this corporation made by later acts and by delegation from the President of large powers granted him by Congress, did not render the corporation in all cases immune to private suit.   P. 566.

3. A bill alleged that the Fleet Corporation, having contracted, May 18, 1917, with a shipbuilding company for the construction of vessels, on December 1, 1917, unlawfully took possession of the property of the company and its subsidiaries and compelled it to make another contract, which the bill sought to set aside, praying also for restoration of the properties, an accounting under the earlier contract and other relief.   *Held:*

(a) That the bill stated a cause of action against the Fleet Corporation, cognizable by a District Court, since

(b) It could not be assumed from the allegations that the taking was in pursuance of powers which had been delegated to the Fleet Corporation by the President, directly or through the Shipping Board, when the taking occurred, or that it was within the ratification of past acts of the Fleet Corporation made by the Executive Order of December 3, 1918; and, consequently,

(c) It did not appear that the special remedies of payment by and suit against the United States in the Court of Claims, for plants taken by the President, were applicable to the case.   P. 567.

4. The Fleet Corporation is liable to be sued for its unlawful acts, even if a remedy also exists by suit against the United States. P. 567.

5. The general immunity of the United States to actions for torts does not extend to those who act in its name.   P. 568.

6. The provision in the general incorporation law of the District of Columbia (Code D. C., § 607) that corporations formed under it may sue and be sued in the District does not mean that they may not be sued elsewhere.   P. 568.

7. A contract made by the Fleet Corporation " representing the United States of America," is the contract of the Corporation and subject to be set aside in a suit against it, if wrongfully brought about.   P. 568.

8. Transfer of the property of the Fleet Corporation to the Shipping Board by the Act of June 5, 1920, c. 250, § 4, 41 Stat. 988, did not affect the jurisdiction to entertain the present suits. P. 568.

9. A suit against the Fleet Corporation is removable from a state to a federal court.  P. 569.

10. The Fleet Corporation *held* suable in a state court for breach of a contract executed by it February 1, 1919, as a corporation of the District of Columbia "representing the United States of America " in which certain necessities and rights of the United States were recognized but in which the Corporation was recognized throughout as the immediate party contracting.  P. 569.

11. A claim in bankruptcy made by the Fleet Corporation in its own name as an instrument of the Government is not entitled to preference as a claim of the United States.  P. 570.

268 Fed. 624; 272 Fed. 132; 270 Fed. 635, reversed.

274 Fed. 893, affirmed.

THE first of these cases is an appeal from a decree of the District Court dismissing on motion, for want of jurisdiction, a bill against the Fleet Corporation, (the general nature of the bill is described in the third headnote) upon the ground that the suit, involving more than $10,000, must be brought in the Court of Claims.  The second is a writ of error to a judgment of the District Court which, upon the same ground, sustained a demurrer to the petition in an action for breach of contract brought against the Fleet Corporation, originally in a court of the State.  The third comes here by certiorari to an order of the Circuit Court of Appeals affirming one of the District Court denying preference to a claim made by the Fleet Corporation in a bankruptcy proceeding.

Mr. *Stephen V. Carey,* with whom Mr. *Evan S. McCord* was on the brief, for appellants in No. 308.

Mr. *W. M. Cake,* with whom Mr. *Gibbs L. Baker,* Mr. *R. H. Cake* and Mr. *L. A. Liljeqvist* were on the brief, for plaintiff in error, in No. 376.

Mr. *Assistant to the Attorney General Goff* and Mr. *Wm. Marshall Bullitt,* with whom Mr. *Solicitor General Beck,* Mr. *Elmer Schlesinger* and Mr. *Henry M. Ward*

were on the brief, for the United States Shipping Board Emergency Fleet Corporation.

The Fleet Corporation is a valid incorporated instrumentality and agent of the United States; and all of its contracts and acts here involved were made and performed, not in its own corporate interest, but exclusively for the United States in the execution of the war powers of Congress.

In many cases corporations have been held to be instrumentalities of the Federal Government and, as such, exempt from even the great reserved powers of the States. *Farmers' & Mechanics' National Bank* v. *Dearing,* 91 U. S. 29, 33, 34; *Easton* v. *Iowa,* 188 U. S. 220, 230, 237; *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516, 524, 525; *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Harrison,* 235 U. S. 292, 298; *Indian Territory Illuminating Oil Co.* v. *Oklahoma,* 240 U. S. 522, 530; *Bank of California* v. *Richardson,* 248 U. S. 476, 483; *Smith* v. *Kansas City Title & Trust Co.,* 255 U. S. 180. In none of them did the relation of the instrumentality to the execution of federal powers begin to approach in directness or in exclusiveness of purpose the immediate relation of the Fleet Corporation to the exercise of Congress's power to declare war and regulate commerce.

In determining whether or not a given corporation is an instrumentality of the United States, it is not material whether the United States owns all of the stock, *Smith* v. *Kansas City Title & Trust Co., supra; Ballaine* v. *Alaska Northern Ry. Co.,* 259 Fed. 183; none of the stock, *Farmers' & Mechanics' National Bank* v. *Dearing, supra; Luxton* v. *North River Bridge Co.,* 153 U. S. 525; *First National Bank* v. *Union Trust Co.,* 244 U. S. 416; or only a part of the stock, *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank,* 9 Wheat. 738; but the United States' complete ownership of the stock may

fairly be adverted to as indicating that the United States desired to have, and has, absolute and complete control over the instrumentality to which it has confided the execution of such vast governmental powers.

An agent of the Government is not liable upon contracts made by him on its behalf. *Hodgson v. Dexter,* 1 Cr. 345; *Sheets v. Selden's Lessee,* 2 Wall. 177, 187; *District of Columbia v. Camden Iron Works,* 181 U. S. 453, 460; *Belknap v. Schild,* 161 U. S. 10, 17; *Parks v. Ross,* 11 How. 362, 374; *Jones v. Le Tombe,* 3 Dall. 383; *Garland v. Davis,* 4 How. 131, 148.

Whatever the Fleet Corporation did, either in signing the contracts with the Astoria Company, the Eastern Shore, and the Sloan Shipyards, or in seizing the latter's plant, or in canceling its contracts with third parties, was done by it just as the same acts might have been done by any individual acting as the delegate of the President's war powers, pursuant to express authorization by Congress.

It is unnecessary to consider what the precise status of the Fleet Corporation would have been had it acted solely under its corporate powers as limited and defined by the Shipping Act 1916. The Corporation was not organized until after the United States had entered the war, and did not function otherwise than as the delegate of the President under the emergency war legislation, until after the passage of the Merchant Marine Act, 1920, 41 Stat. 988. It was not until after the declaration of war, and in response to the President's appeal for ships, that the machinery of the Shipping Act 1916 was utilized to create the Fleet Corporation as an instrumentality that might be used to execute the war powers of Congress.

The Fleet Corporation acquired, just as any private individual would have acquired, a special status as a federal instrumentality, when the President, under the Act of June 15, 1917, and subsequent legislation, delegated his war powers to it.

This is obvious when it is observed that neither the Shipping Act 1916, the District of Columbia corporation laws, nor the Fleet Corporation's certificate of incorporation authorized it: To condemn land or houses for employees; to build houses (40 Stat. 438); to take possession of, lease, or assume control of street railways or interurban railroads (40 Stat. 535); to extend or improve such street railways or interurban railroads (40 Stat. 1022); to condemn lumber camps, sawmills, standing timber, rights of way, etc. (40 Stat. 888); or to requisition dry docks, marine railways, discharging terminals, etc. (40 Stat. 1022)—all of which powers were conferred on the Fleet Corporation by Congress, either directly or by delegation of the President. It was under these delegated powers that the Corporation performed or committed each of the acts which are made the basis of the present suits.

Congress has, in various ways, recognized that the Fleet Corporation, at least in its existence and operations as delegate of the war powers of Congress, is but a governmental bureau, and not a private corporation in the ordinary sense.

It should be borne in mind that the Fleet Corporation, while technically incorporated under the laws of the District under the authority of the Shipping Act 1916, was a mere empty shell and never received its $50,000,000 capital until after the President had delegated to it his war powers; that the capital was all spent in administration expenses, and that whatever property it ever acquired, or now has, was acquired from appropriations made to carry out the war power delegations of Congress and the President, and is exclusively the property of the United States.

The Fleet Corporation could not acquire any beneficial or proprietary interest in any property obtained as the delegate of the President's war powers or as an agency

of the United States. It could only hold the property in trust for the United States. Hence, the provisions of the Merchant Marine Act 1920, § 4, 41 Stat. 990, transferring all vessels and other property acquired by the President through any agency whatsoever to the Shipping Board.

Whether the suit is one against the United States is determined, not by the fact of the party named as defendant on the record, but by the question of the effect of the judgment which can be rendered; and whether the United States is the real party in interest. *Louisiana* v. *McAdoo,* 234 U. S. 627, 629; *Kansas* v. *United States,* 204 U. S. 331, 341; *Oregon* v. *Hitchcock,* 202 U. S. 60, 68; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 384, 386, 387.

In determining whether a given suit is really one against the United States, exactly the same rules apply as obtain in determining whether a suit is against one of the several States. *Kansas* v. *United States,* 204 U. S. 331, 341; *Tindal* v. *Wesley,* 167 U. S. 204, 213.

The United States is the real party in interest because: In the Astoria Case a money judgment is asked against the Fleet Corporation as damages on a contract which it made as delegate of the President and in which it described itself as " representing the United States of America," and any judgment recovered, if ever paid, could only be paid out of a congressional appropriation; in the Sloan Shipyards Case the property sought to be impounded and restored is in the possession of the United States and was taken by seizure under requisition on December 1, 1917, and the mortgage sought to be canceled is also the property of the United States and was given to secure a $1,000,000 bond running to the Fleet Corporation " representing the United States of America " under a contract also entered into " representing the United States of America "; and in the Eastern Shore Case the claim of the Fleet Corporation is for moneys due under

a contract which it made " representing the United States
of America ", and the claim, while in the name of the
Fleet Corporation, is for the United States, and priority
of payment is demanded as a " debt due to the United
States ".

The United States is an indispensable party because in
the Sloan Shipyards Case the United States is in posses-
sion of all the property and the actual owner of the
$1,000,000 mortgage sought to be canceled, title thereto
having been taken (if not already in it) by the Merchant
Marine Act 1920; and it is inconceivable that a decree
changing possession of property or canceling a mortgage
can be rendered without the presence of the possessor of
the property and the owner of the thing canceled. *Niles-
Bement-Pond Co.* v. *Iron Molders' Union,* 254 U. S. 77,
80; *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109
U. S. 446, 456; *Bogart* v. *Southern Pacific Co.,* 228 U. S.
137, 147.

This court has held that a suit may be maintained
against an officer or agent of a State or the United States,
and that it is not a suit against the sovereign, in the fol-
lowing circumstances, none of which apply to the cases
at bar, to wit:

(1) To enjoin a state officer from taking any threatened
future action in the name of or for the State, under color
of his office, to enforce, or in pursuance of, an unconsti-
tutional statute, *Osborn* v. *Bank,* 9 Wheat. 738, 868;
*Davis* v. *Gray,* 16 Wall. 203, 220; *Board of Liquidation*
v. *McComb,* 92 U. S. 531, 541; *Pennoyer* v. *McCon-
naughy,* 140 U. S. 1, 10, 12; *In re Tyler,* 149 U. S. 164,
190; *Scott* v. *Donald,* 165 U. S. 107, 112; *Smyth* v. *Ames,*
169 U. S. 466, 519; *Prout* v. *Starr,* 188 U. S. 537, 543;
*Ex parte Young,* 209 U. S. 123, 151–159; *Western Union
Telegraph Co.* v. *Andrews,* 216 U. S. 165; *Ludwig* v.
*Western Union Telegraph Co.,* 216 U. S. 146, 159, 163–4;
*Herndon* v. *Chicago, R. I. & Pac. Ry. Co.,* 218 U. S. 135,

155; *Truax* v. *Raich,* 239 U. S. 33, 37; *Looney* v. *Crane Co.,* 245 U. S. 178, 191; *Terral* v. *Burke Construction Co.,* 257 U. S. 529.   And the suit is equally maintainable where the threatened future action is to enforce or carry out an unconstitutional action (for example, confiscatory) of a state officer proceeding under a valid statute, *Greene* v. *Louisville & Interurban R. R. Co.,* 244 U. S. 499, 507; *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20, 38; *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362, 390; *Louisville & Nashville R. R. Co.* v. *Greene,* 244 U. S. 522, 528; provided, of course, the threatened wrong be such as equity will enjoin; and the fact that the officer is threatening to commit the wrong in the name of the State and under the color of his office is of no significance whatever; for the wrong will be enjoined just as if he were acting in his individual capacity.

(2) To enjoin an officer (a) from doing a threatened future act (for example, canceling a patent, etc., which would cast a cloud on plaintiff's title) when such action was about to be taken through a mistaken conception of his authority, *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Noble* v. *Union River Logging R. R. Co.,* 147 U. S. 165, 171, 172; *School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 110; *Lane* v. *Watts,* 234 U. S. 525, 540; *Payne* v. *Central Pacific Ry. Co.,* 255 U. S. 228, 238, and those cases are quite similar to the cases involving merely ministerial action presently to be noticed; or (b) from instigating criminal proceedings involving the same legal questions as those presented in a pending equity suit for the protection of property rights.  *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 621, 622.

(3) To compel by mandamus the performance by the officer of some plain, unmistakable, mere ministerial duty, prescribed by some special statute, and not affecting the general powers or functions of the Gov-

ernment, which unless performed would deprive the plaintiff of vested property rights. *Ballinger* v. *Frost,* 216 U. S. 221, 230; *Roberts* v. *United States,* 176 U. S. 221, 230, 231; *Butterworth* v. *Hoe,* 112 U. S. 50, 68; *United States* v. *Schurz,* 102 U. S. 378, 395, 404; *Kendall* v. *United States,* 12 Pet. 524, 610–618; *Marbury* v. *Madison,* 1 Cranch, 137; *arguendo* see *Ness* v. *Fisher,* 223 U. S. 683–694; *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U. S. 446, 452–453.

(4) To recover damages at law, for a past act of tort by a state official or instrumentality, done in good faith, in the name of the State under color of office, where the officer, having no personal interest, was mistaken in thinking he had the lawful right to take the action he did, *Bates* v. *Clark,* 95 U. S. 204, 209; *White* v. *Greenhow,* 114 U. S. 307; *Chaffin* v. *Taylor,* 114 U. S. 310; *Mitchell* v. *Harmony,* 13 How. 114, 137; *Scott* v. *Donald,* 165 U. S. 58, 67–70; *Hopkins* v. *Clemson College,* 221 U. S. 636, 645; *Johnson* v. *Lankford,* 245 U. S. 541, 546; *Belknap* v. *Schild,* 161 U. S. 10, 18, 23, 26 as to the damages at law; *arguendo* see *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U. S. 446, 452; and *a fortiori* where the official's act was arbitrary, capricious and in disregard of the law. *Johnson* v. *Lankford,* 245 U. S. 541, 546.

(5) To recover specific property, real or personal, because of the present wrongful action of an official, in good faith, and under color of office, unlawfully withholding plaintiff's property under the erroneous belief that the law authorized such withholding. *United States* v. *Lee,* 106 U. S. 196; *Tindal* v. *Wesley,* 167 U. S. 204, 211, 218, 221, 222; *Scranton* v. *Wheeler,* 179 U. S. 141, 152; *Poindexter* v. *Greenhow,* 114 U. S. 270, 288; *Osborn* v. *Bank,* 9 Wheat. 738, 844, 845, 871.

The cases at bar fall within one or more of the follow-

ing classes of suits which have been held to be, in effect, suits against the State or the United States and, hence, not maintainable:

(1) Interference with the funds or property in the possession of the State. *Lankford* v. *Platte Iron Works,* 235 U. S. 461; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151; *Goldberg* v. *Daniels,* 231 U. S. 218, 221; *International Postal Co.* v. *Bruce,* 194 U. S. 601; *Belknap* v. *Schild,* 161 U. S. 10; *Christian* v. *Atlantic & North Carolina R. R. Co.,* 133 U. S. 233; *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U. S. 446; *Louisiana* v. *Jumel,* 107 U. S. 711; *Case* v. *Terrell,* 11 Wall. 199.

(2) Attempts to compel or restrain action regarding title to lands. *Knight* v. *Lane,* 228 U. S. 6; *Ness* v. *Fisher,* 223 U. S. 683; *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316; *Minnesota* v. *Hitchcock,* 185 U. S. 373; *Oregon* v. *Hitchcock,* 202 U. S. 60; *Louisiana* v. *Garfield,* 211 U. S. 70; *Stanley* v. *Schwalby,* 147 U. S. 508. It is abundantly settled that suits cannot be brought against governmental officers the object of which is (a) to compel the execution of a contract, *International Construction Co.* v. *Lamont,* 155 U. S. 303; (b) to compel acts to be done, which, when done, would constitute performance by the State of a contract, or to enjoin things from being done which if done would constitute a breach by the State of a contract, *In re Ayers,* 123 U. S. 443; *Hagood* v. *Southern,* 117 U. S. 52; (c) to compel some affirmative official action in the performance of an obligation of the State, *Hagood* v. *Southern,* 117 U. S. 52, 69, 70; or (d) to collect money, *Smith* v. *Reeves,* 178 U. S. 436, 439; *Louisiana* v. *Jumel,* 107 U. S. 711, 726-8; *Belknap* v. *Schild,* 161 U. S. 10, 26; where, under the principles enunciated in the foregoing cases, the State being a necessary party, on account of the effect of the decree on its property or rights, the bill must be dismissed. *Wells*

v. *Roper,* 246 U. S. 335, 337; *Christian* v. *Atlantic &
North Carolina R. R. Co.,* 133 U. S. 232, 241, 244, 245;
*Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U. S.
446, 451, 457.

(3) Injunctions to restrain executive officers or agents
from the performance of their duty. *Wells* v. *Roper,* 246
U. S. 335; *Louisiana* v. *McAdoo,* 234 U. S. 627; *United
States* v. *Black,* 126 U. S. 40, 48; *Decatur* v. *Paulding,* 14
Pet. 497, 515.

In the light of the foregoing authorities, the present
suits against the Fleet Corporation are in substance and
effect suits against the United States, because they relate
only to acts performed by the Corporation, not under any
general corporate power as derived from its incorpora-
tion, but as the specially selected agency to carry out the
war powers of the President. To the same effect, see
*Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135,
152; *Dakota Central Telephone Co.* v. *South Dakota,* 250
U. S. 163; *Macleod* v. *New England Telephone Co.,* 250
U. S. 195; *Kansas* v. *Burleson,* 250 U. S. 188.

As the wrongs of which the Sloan Shipyards complains
were all committed by the Fleet Corporation while acting
under the Act of June 15, 1917, 40 Stat. 183, it is plain
that the Shipyards' exclusive remedy is to follow the
provisions of that statute, just as Congress provided with
respect to a great number of other war-time requisitions.
See *United States* v. *Pfitsch,* 256 U. S. 547.

When Congress undertook to authorize requisitioning,
cancelation, etc., and to afford, as under the Fifth Amend-
ment it was bound to afford, a provision for just compen-
sation, its legislation on that point was necessarily exclu-
sive, *Arnson* v. *Murphy* 109 U. S. 238, 243; *United States*
v. *Babcock,* 250 U. S. 328, 331; and until the plaintiff shall
have had an award by the President, it has no right to
maintain any suit, even if it be conceded for the sake of
argument that the Fleet Corporation is ordinarily suable

as any other corporation. There is no more reason to bring suit against the Fleet Corporation when it was acting as the authorized delegate of the President in the requisitioning of plants, ships, contracts, and materials, than there would be to bring suit against the President or the Secretary of the Navy when he was acting as such delegate of Congress' powers. *United States* v. *Babcock,* 250 U. S. 328, 331; *Geddes* v. *Anaconda Mining Co.,* 254 U. S. 590, 593.

The entire point of *United States Bank* v. *Planters' Bank,* 9 Wheat. 904; *Bank of Kentucky* v. *Wister,* 2 Pet. 318, 324; and *United States* v. *Strang,* 254 U. S. 491, and similar cases, is that agents of a corporation are not generally agents of the stockholders and cannot contract for them by virtue of the mere relation of the stockholder to the corporation, but that is a very different thing from a stockholder affirmatively constituting the corporation his agent or instrumentality for carrying out his own purposes.

The general provision of the District of Columbia Code, § 607, that a corporation organized thereunder should " be capable of suing and being sued in any court of law or equity in the District," only intended to render this corporation capable of suing and being sued by its corporate name in any court in the District (see *National Volunteer Home* v. *Parrish,* 229 U. S. 494, 497), where the court had jurisdiction otherwise over the corporation. *Bankers Trust Co.* v. *Texas & Pacific Ry. Co.,* 241 U. S. 295, 305; *Porto Rico* v. *Rosaly,* 227 U. S. 270, 277.

In *Southern Bridge Co.* v. *Fleet Corporation,* 266 Fed. 747, 752, and *Commonwealth Finance Co.* v. *Landis,* 261 Fed. 440, 444, it was held that suits against the Corporation were suits against the United States, but that they were maintainable because the United States had consented to be sued in the District Courts for less than $10,000 (Jud. Code, § 24, subsec. 20) or in the Court of

Claims (*id.* § 145); but the learned judges delivering those opinions apparently overlooked the point that the United States had given a special consent to be sued only for any balance that might be claimed in excess of 75% of the President's award of "just compensation," and that such consent was exclusive and rendered inapplicable the general provisions of the Judicial Code cited.

Even conceding that the provision for "just compensation" is not exclusive and that actions may be maintained under Jud. Code, §§ 24, 145, there is certainly no jurisdiction to sue the Fleet Corporation in the state courts. *Smith* v. *Reeves,* 178 U. S. 436–445.

Just as, under some circumstances, the States may tax property used by agents of the United States in executing governmental powers, *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375, 382; and also the property of corporations chartered by Congress and engaged in performing federal services, *Thomson* v. *Pacific Railroad,* 9 Wall. 579; *Railroad Co.* v. *Peniston,* 18 Wall. 5, 30–35; while, on the other hand, the States cannot tax the property of other governmental instrumentalities, *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Harrison,* 235 U. S. 292; *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664; so it is that many corporations chartered by Congress are ordinarily subject to suit, as the acts of incorporation usually provide that they may sue and be sued, while, on the other hand, such corporations may be immune from suit if the nature of the transaction is such that by established rules of law such a suit cannot be maintained.

When power is conferred upon a corporation to sue and be sued, it derives only the same power which each individual inherently possesses. Therefore, in many instances heretofore cited where individuals were immune from suit because the suit was really against the State or the United

States, such immunity would also have attached to any corporation, if it had been occupying the identical position of agency which the individual occupied.

The effect of the decision in *The Lake Monroe*, 250 U. S. 246, was simply to hold that under the Act of 1918 if, and when, the Shipping Board chartered a vessel to private parties for merchant use, such vessel, notwithstanding the United States' ownership or interest therein, became subject to the ordinary rules of admiralty law. The United States by this act simply waived the immunity which it otherwise had, which was a recognition that otherwise the Fleet Corporation, its property and operations were exempt—an admission that the Fleet Corporation occupied such a relation to the Federal Government as an instrumentality thereof that property in its possession or control was not its own private corporate property, but was that of the United States.

In order to do away with *The Lake Monroe* decision, Congress promptly adopted the Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, prohibiting the seizure of any vessel owned, possessed or operated by or for the United States or the Fleet Corporation, so long as the United States owned all its stock.

If the decision in *The Lake Monroe* be given the effect attributed to it by the District Courts in *Gould Coupler Co.* v. *Fleet Corporation*, 261 Fed. 716; *Lord & Burnham* v. *Fleet Corporation*, 265 Fed. 955, 958; *Perna* v. *Fleet Corporation*, 266 Fed. 896; and *American Cotton Oil Co.* v. *Fleet Corporation*, 270 Fed. 296, the result will be to subject the United States to liability in tort, affirmative relief in equity, and to suits for unlimited amounts in the state courts and for amounts in excess of $10,000 in the federal courts, to neither of which has it ever heretofore consented; and to give to persons having business relations with the Fleet Corporation a discriminatory advantage over all other persons having similar business relations with other government departments.

9544°—23——39

*United States* v. *Strang,* 254 U. S. 491, is not in point. The decision was based on the proposition that the agents of a corporation are not agents for the stockholders and can not contract for the stockholders. See *Krichman* v. *United States,* 256 U. S. 363.

The Fleet Corporation is entitled to a priority of payment in the Eastern Shore Case, as its claim is a " debt due to the United States." *Lewis* v. *United States,* 92 U. S. 618; *Guarantee Title & Trust Co.* v. *Title Guaranty & Surety Co.,* 224 U. S. 152.

*Mr. Godfrey Goldmark* for respondent in No. 526.

MR. JUSTICE HOLMES delivered the opinion of the court.

These cases present in different ways the question of the standing of the United States Shipping Board Emergency Fleet Corporation in the Courts—the first two, whether it so far embodies the United States that these suits should have been brought in the Court of Claims; the third whether it is entitled to a preference against a bankrupt which it is asserted would belong to the United States if the United States claimed in its own name. The facts material at this stage can be told in a few words. The Shipping Act of September 7, 1916, c. 451, 39 Stat. 728, passed no doubt in contemplation of the possibility of war, to create a naval reserve and merchant marine, established the United States Shipping Board and gave it power to form a corporation under the laws of the District of Columbia for the purchase, construction and operation of merchant vessels—the corporation to be dissolved " at the expiration of five years from the conclusion of the present European war." The stock was not to exceed $50,000,000, and the Board was authorized to purchase not less than a majority of such stock. War was declared on April 6, 1917, and the corporation was formed on the 16th of the same month.

The first case is a bill brought by the Sloan Shipyards Corporation, the Capital City Iron Works and the Anacortes Shipbuilding Company. According to the allegations, on May 18, 1917, the new corporation made an elaborate contract with the Sloan Shipyards Corporation for the building by the latter of sixteen wooden vessels. At that time the Emergency Fleet Corporation had only the powers given by the incorporation laws of the District. The work was begun by the Sloan Shipyards Corporation and by the two other complainants, which were subsidiary companies organized for the purpose of carrying out that contract, and went on until December 1, 1917, at which time the Fleet Corporation refused to make further payments required by the contract, unlawfully took possession of all the property of the three companies named, has retained it ever since, and has done a series of acts causing them great loss. It is alleged that the defendant having thus got the Sloan Shipyards Corporation wholly within its power compelled it to execute another contract set forth. The bill seeks to have this contract set aside, to have an accounting on the footing of the original contract of May 18, to have the defendant charged with all indebtedness incurred since December 1, 1917, and required to restore the properties described in the bill. The bill was dismissed by the District Court on the ground that as the claim was for more than $10,000 the suit must be brought in the Court of Claims. 268 Fed. 624; 272 Fed. 132.

The Shipping Act contemplated a corporation in which private persons might be stockholders and which was to be formed like any business corporation under the laws of the District, with capacity to sue and be sued. The United States took all the stock but that did not affect the legal position of the company. *United States* v. *Strang*, 254 U. S. 491. At that stage the original contract was made. Subsequently the powers of the corporation

were greatly enlarged. On July 11, 1917, the President
delegated to it the powers that had been conferred upon
him by the Act of June 15, 1917, c. 29, 40 Stat. 182, appli-
cable to the construction, purchase and requisitioning of
vessels in process of construction and of materials for ship
construction, and delegated to the Shipping Board his
powers to take by purchase or requisition constructed
vessels and the operation of all vessels acquired by the
United States, with authority to exercise these powers
either directly or through the Fleet Corporation. Whether
the Fleet Corporation did or could rely upon this delega-
tion in its alleged acts of December, 1917, or whether it
purported to be acting under powers conferred upon it by
the contract does not appear from the allegations of the
bill. Subsequently the Fleet Corporation by successive
acts and proclamations was authorized to condemn various
forms of property. Act of March 1, 1918, c. 19, 40 Stat.
438. April 22, 1918, c. 62, 40 Stat. 535. July 9, 1918, c.
143, 40 Stat. 845, 888. November 4, 1918, c. 201, 40 Stat.
1020, 1022. Executive Order of December 3, 1918, dele-
gating all powers as to ship or plant construction and
ratifying previous acts. Perhaps it is enough to add a
reference to the Act of June 5, 1920, c. 250, 41 Stat. 988,
993, continuing the existence of the Fleet Corporation and
its authority to operate vessels until all vessels are sold
as directed by the act, § 11, but transferring the title to
the Shipping Board. § 4.

These provisions sufficiently indicate the enormous
powers ultimately given to the Fleet Corporation. They
have suggested the argument that it was so far put in
place of the sovereign as to share the immunity of the
sovereign from suit otherwise than as the sovereign allows.
But such a notion is a very dangerous departure from one
of the first principles of our system of law. The sovereign
properly so called is superior to suit for reasons that often
have been explained. But the general rule is that any

person within the jurisdiction always is amenable to the law. If he is sued for conduct harmful to the plaintiff his only shield is a constitutional rule of law that exonerates him. Supposing the powers of the Fleet Corporation to have been given to a single man we doubt if anyone would contend that the acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts. *Osborn* v. *Bank of United States,* 9 Wheat. 738, 842, 843; *United States* v. *Lee,* 106 U. S. 196, 213, 221. The opposite notion left some traces in the law, 1 Roll. Abr. 95, Action sur Case, T., but for the most part long has disappeared.

If what we have said is correct it cannot matter that the agent is a corporation rather than a single man. The meaning of incorporation is that you have a person, and as a person one that presumably is subject to the general rules of law. The only serious question is whether special remedies have been provided by statute that displace those that otherwise would be at the plaintiff's command. The Acts of April 22, 1918, c. 62, § 3, 40 Stat. 535, and of July 18, 1918, c. 157, § 13, 40 Stat. 913, 916, give compensation for a plant taken by the President under the powers conferred by the Act of June 15, 1917, c. 29, 40 Stat. 182, and otherwise, with a resort for claims exceeding $10,000 to the Court of Claims; in the later act, by a suit against the United States. But the taking possession of the plaintiffs' plants on December 1, 1917, is alleged to have been unlawful and it cannot be assumed at this stage that the act of the Fleet Corporation was in pursuance of any powers then delegated to it or was within the ratification of December 3, 1918. The plaintiffs are not suing the United States but the Fleet Corporation, and if its act

was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act. In general the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name. It is not impossible that the Fleet Corporation purported to act under the contract giving it the right to take possession in certain events, but that the plaintiffs can show that the events had not occurred. The District Judge gave weight to the phrase in the general incorporation law of the District that corporations formed under it shall be capable of suing and being sued in any Court in the District. Code, D. C. § 607. But we do not read those words as putting District corporations upon a different footing from those formed under the laws of the States.

We attach no importance to the fact that the second contract, alleged to have been illegally extorted, was made with the Fleet Corporation " representing the United States of America." The Fleet Corporation was the contractor, even if the added words had any secondary effect. But the bill alleges that it was brought about by the wrongful act of the Fleet Corporation. The conclusion that we reach is that the District Court erred in dismissing the bill and we regard it as led up to and almost required by the decisions heretofore reached in *The Lake Monroe,* 250 U. S. 246, and *United States* v. *Strang;* 254 U. S. 491. See further *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163, 177, 178. *Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135, 152. The transfer of the property of the Fleet Corporation to the Shipping Board by the Act of June 5, 1920, c. 250, § 4, 41 Stat. 988, 990, may affect the value of the remedy afforded by the present suit but not the jurisdiction of the Court.

It is suggested that there will be lack of uniformity if suits can be brought in State Courts. This consideration cannot control our conclusion from the statutes. But it

is not very serious since such suits against this Corpora-
tion can be removed to the Courts of the United States,
*Pacific Railroad Removal Cases,* 115 U. S. 1, and after-
wards are subject to review here. *Creswill* v. *Grand
Lodge Knights of Pythias,* 225 U. S. 246, 258. *Southern
Pacific Co.* v. *Stewart,* 245 U. S. 359; *ibid.* 562. The
change in the law by the Act of January 28, 1915, c. 22,
§ 5, 38 Stat. 803, 804, extends only to railroads. The.
decree of the District Court must be reversed.

In the next case the Astoria Marine Iron Works sued
in a State Court for breach of a contract set forth. The.
suit was removed to the District Court and there dismissed
upon demurrer on the same ground as the last—that the
only remedy was in the Court of Claims. 270 Fed.
635. This contract was made on February 1, 1919, when
the character of the Fleet Corporation had been more
fully developed and determined than in the previous case,
and purported to be made with the Fleet Corporation, " a
Corporation organized and existing under the laws of the
District of Columbia (herein called the 'Corporation'),
representing the United States of America, party of the
second part." Throughout the contract the undertakings
of the party of the second part are expressed to be under-
takings of the Corporation and it is this corporation and
its officers that are to be satisfied in regard to what is
required from the Iron Works. It is recognized that it
may be necessary for the United States to exercise com-
plete control over the furnishing of supplies to the Iron
Works and it is agreed that if required by the Corpora-
tion " and/or the United States " the Iron Works will
furnish schedules, &c., &c. The whole frame of the instru-
ment seems to us plainly to recognize the Corporation as
the immediate party to the contract. The distinction
between it and the United States is marked in the phrase
last quoted. If we are right in this, further reasoning
seems to us unnecessary to show that there was jurisdic-

tion of the suit. The fact that the corporation was formed under the general laws of the District of Columbia is persuasive, even standing alone, that it was expected to contract and to stand suit in its own person, whatever indemnities might be furnished by the United States. The judgment in this case also must be reversed.

The third case, as we have said, is a claim of priority in bankruptcy. It was asserted against the estate of the Eastern Shore Shipbuilding Corporation, in the District Court for the Southern District of New York, under a contract similar to that last described, made by that Company with the Fleet Corporation " representing the United States of America " to construct six harbor tugs. The claim was presented by the Fleet Corporation in its own name, but was put forward by it as an instrumentality of the Government of the United States. It was denied successively by the referee, the District Court and the Circuit Court of Appeals on the ground that the Fleet Corporation was a distinct entity, and that, whatever might be the law as to a direct claim of the United States, the Fleet Corporation stood like other creditors and was not to be preferred. 274 Fed. 893. The considerations that have been stated apply even more obviously to this case. The order is affirmed.

> *308. Decree reversed.*
> *376. Judgment reversed.*
> *526. Order affirmed.*

MR. CHIEF JUSTICE TAFT, with whom concurred MR. JUSTICE VAN DEVANTER and MR. JUSTICE CLARKE, dissenting.

I differ with the majority in the first two of these three cases. The question presented is one of the interpretation of the will of Congress. No one can contend that Congress in using the Fleet Corporation for its purposes might not have given it express immunity from suit as a

549. TAFT, Ch. J., VAN DEVANTER and CLARKE, JJ., dissenting.

representative of the United States. What we have to decide is whether in the mass of urgent legislation in respect to the Government's construction and operation of shipping made indispensable by the peculiar exigencies of the great war, Congress intended that this corporate agent should be subject to suit only as its principal is. I concede that the legislation originally creating this corporation, without express immunity from suit, naturally gives rise to the inference that Congress concluded that the greater freedom of action secured by carrying on business in corporate form was desirable and that in the absence of express provision for it, and in respect to what the corporation was originally intended to do, immunity can not be reasonably implied from the relation of the Government to the corporation and its interest in its business. As I read the record, however, the transactions in the two cases I am discussing, and which we have to consider, took place after the situation prompting the creation of this corporation had greatly changed and after much additional legislation. The power to do the things which were here done, and which are the subjects of these suits, is not to be found in the act creating the Fleet Corporation or in legislation expanding its original faculties. It was power vested directly in the President himself, the exercise of which he was given express authority to delegate to an agent, who might be the Fleet Corporation. The act conferring this Presidential power provided a specific remedy for compensation to those whose property rights were invaded by its exercise through award by the President and immediate payment of part due thereunder, with the right to the claimant to litigate the justice of the whole award in the Court of Claims. The Fleet Corporation in the arrangements which it forced upon the claimants in these two cases to their detriment expressly declared that it acted as a representative of the United States. I think the proper construction to be put upon

the facts and the law is that these suits are in fact against the United States and can not be brought except in the manner and under the procedure provided by the statute for claims for compensation for acts done by authority of the President under the act vesting him with it.

The opinion of the court is carefully drawn and if its conclusion is to rest merely on the nice distinction that it does not clearly appear from a proper construction of the pleadings that the acts here complained of were acts done under authority delegated by the President to the Fleet Corporation, as his agent, then the question I have been discussing and which seems to me to be in these cases is not here decided, and will only arise on answer and evidence.

I do not think that either the case of *The Lake Monroe,* 250 U. S. 246, or that of *United States* v. *Strang,* 254 U. S. 491, requires the conclusion reached herein by the majority of the court, and, indeed, their opinion is not clear and unqualified in reference to the effect of those cases.

I should not think it necessary to record a difference with my brethren of the majority but for considerations of high public expediency which may properly weigh with us in construing a doubtful statute of Congress because they must have been in the mind of Congress in the enactment of the legislation.   We are made aware of the very great number of suits pending and likely to arise out of the work of the Fleet Corporation and the enormous total involved in them. ·This was to be expected.   Can Congress be supposed to have intended that these suits might be brought in forty-eight different States and in courts of first instance of those States with the lack of uniformity in the findings of fact and the conclusions of law likely to be encountered where trials are had by courts and by courts and juries in so many varying jurisdictions?   Did it propose to allow the United States to be made liable in litigation anywhere or under any form of procedure

without any regulation on its part to secure a reasonable limitation of its own as to the time within which such suits shall be brought? The court suggests that judgments thus obtained will be good only against the Fleet Corporation and the claimants must run the risk of getting a judgment against a debtor which can not pay. Congress has taken over all the assets of the Fleet Corporation so that such judgments will be valueless except as Congress shall conclude to pay them. If, in the judgments obtained in the various courts of the country, Congress shall find such variety of view as not to commend them to its sense of fairness, it will be slow to recognize its obligation to pay them, and we shall have a repetition of the history of the French Spoliation claims which for many decades occupied the attention of appropriation committees of Congress and wore out their patience with results that have put in the hearts of claimants a deep sense of the injustice of Governments. On the other hand, a construction which will bring into one tribunal, the Court of Claims, the hearing and decision of this class of cases, will secure uniformity and dispatch and these two elements will make for justice and peace, because Congress pays the judgments of the Court of Claims against the United States in due course. The result reached by the court if it is to go as far as I fear it must, even with the careful limitation of the language of the judgment, will make the existing confusion as to the claims against the Fleet Corporation worse confounded. It is to be hoped that, if the ultimate view of the court of the effect of the statutes under discussion is to spread this litigation all over the country with ineffective and doubtful results dependent on future approval of Congress, Congress itself may by further remedial legislation avoid such an undesirable condition, unfavorable both to the United States and the litigants.

As to the preference claimed against a bankrupt in No. 526 by the Fleet Corporation, I concur in the conclusion of the court that it can not be allowed under the statute as to preferences in bankruptcy, because I do not think it extends to claims of the United States except those for taxes.