## APPEAL OF A. LIETZ CO.

Docket No. 2411.   Submitted April 23, 1925.   Decided October 5, 1925.

Contracts entered into by the taxpayer with the United States Shipping Board Emergency Fleet Corporation constitute "Government contracts" within the meaning of section 1 of the Revenue Act of 1918, and income derived from such contracts is taxable under the provisions of section 301 of that Act.

*W. W. Spalding, Esq.,* for the taxpayer.
*F. O. Graves, Esq.,* for the Commissioner.

Before GRAUPNER, LANSDON, and GREEN.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $2,037.09, and for the year 1920 in the amount of $95.92, or a total deficiency of $2,133.01. From such of the facts alleged in the petition as were admitted by the answer and from a stipulation of the parties, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a California corporation with its principal office located in San Francisco.

During the year 1919 the taxpayer made deliveries of merchandise under three contracts with the United States Shipping Board Emergency Fleet Corporation, with resulting gross income therefrom of $91,605, and net income therefrom of $8,507.17.

That amount, $8,507.17, was treated by the Commissioner as 1919 income from Government contracts and, along with 1919 net income from contracts with the Navy Department, in the amount of $4,251.13, was subjected by the Commissioner, in the deficiency

letter, to profits taxation at 1918 rates, under subdivision (c) of section 301 of the Revenue Act of 1918.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LANSDON: The single question raised by this appeal is whether the contracts made by the taxpayer with the United States Shipping Board Emergency Fleet Corporation were " Government contracts " within the meaning of the Revenue Act of 1918.

Section 301 of that Act provides:

(c) For the taxable year 1919 * * * there shall be levied, collected, and paid upon the net income of every corporation which derives in such year a net income of more than $10,000 from any Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive, a tax * * *

Section 1 contains the definition:

The term " Government contract " means (a) a contract made with the United States, or with any department, bureau, officer, commission, board, or agency, under the United States and acting in its behalf, or with any agency controlled by any of the above if the contract is for the benefit of the United States, or (b) a subcontract made with a contractor performing such a contract if the products or services to be furnished under the subcontract are for the benefit of the United States. The term " Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive " when applied to a contract of the kind referred to in clause (a) of this paragraph, includes all such contracts which, although entered into during such period, were originally not enforceable, but which have been or may become enforceable by reason of subsequent validation in pursuance of law.

Subdivision (a) of the foregoing definition is divisible into three parts:

1. A contract made with the United States.

2. A contract made with any department, bureau, officer, commission, board, or agency, under the United States and acting in its behalf.

3. A contract made with any agency controlled by any of the above if the contract is for the benefit of the United States.

We interpret that paraphrasing to mean: As to 1, a contract made directly with the United States; as to 2, a contract made in the name and behalf of the United States; and as to 3, a contract made for the benefit of the United States by an agency controlled by the United States, or by any department, bureau, officer, commission, board, or agency under the United States and acting in its behalf.

If the language of the Act of 1918 were such as to limit the tax to net income from contracts with the United States or in the name and behalf of the United States, we would disapprove the deficiency upon the authority of *Sloan Shipyards Corporation* v. *United States Shipping Board Emergency Fleet Corporation and the United States*, 258 U. S. 549; and *United States* v. *Strang*, 254 U. S. 491; and would deem the situation distinguishable from *Brooks Scanlon Corporation* v. *United States*, 265 U. S. 106.

However, taking judicial notice of the facts set forth in those several cases, it appears that the United States owned all of the stock in the Emergency Fleet Corporation. Such ownership of all of the stock constituted such control of the agency as, in our opinion, was contemplated by Congress in adopting section 1 of the Revenue Act of 1918. To be sure, Congress did not expressly say that a contract with the Emergency Fleet Corporation would be included in the words " Government contract," but to argue that the omission of the specific reference is equal to an expression of intent to exclude might be fairly answered by the suggestion that if Congress had intended to exclude such a contract, it would have definitely so stated, since it knew that the Emergency Fleet Corporation was an agency of the United States.

In our opinion, there is no question of ambiguity or doubt in the law itself. The Emergency Fleet Corporation was an agency controlled by the United States. It was construed to be an agency *of* the United States by both the majority and minority opinions in the *Sloan* case, *supra*. The independent liability of the agency as an entity separate from the United States, which was the ground of decision in the *Sloan* case, does not deny the existence of the entity as an agency. To the contrary, the court was unanimous on that feature. Obviously, an agency *of* the United States would be an agency controlled *by* the United States, at least under the facts in the situation in question.

The apparent purpose of Congress in adopting the definition of " Government contracts," and the continuation of the 1918 rates of taxation upon the profits therefrom, was to return to the United States through taxes any excessive profits resulting from contracts in the performance of which the United States would derive a benefit, not necessarily as a stockholder, but rather in a general sense. *Appeal of Tampa Shipbuilding & Engineering Co.*, 1 B. T. A. 485.

ARUNDELL not participating.