HARWOOD. v. UNITED STATES SHIPPING
BOARD EMERGENCY FLEET CORPO-
RATION (SIEGEL et al., Interveners).

Petition of TOPPING BROS.

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 230.

Herbert B. Lee, of New York City, and Charles B. Waller, of New London, Conn., for appellant trustee.

Edwards, Murphy & Minton, of New York City (Frederick H. Wood, Herbert B. Lee, W. H. L. Edwards, and William W. Robison, all of New York City, of counsel), for appellants ancillary receivers.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson, of New York City, of counsel), for appellant Topping Bros.

John Buckley, U. S. Atty., of Hartford, Conn., Chauncey G. Parker, Gen. Counsel U. S. Shipping Board, of Washington, D. C., and Henry F. Parmelee, Sp. Asst. Atty. Gen., of New York City, for United States Shipping Board Emergency Fleet Corporation.

Robert G. Dodge and Laurence Curtis, 2d, both of Boston, Mass., amici curiæ.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The Groton Iron Works, for whom a trustee in bankruptcy has been appointed, entered into contracts with the United States Shipping Board Emergency Fleet Corporation for the construction of ships for the Fleet Corporation. This suit seeks to set aside a contract of settlement made March 26, 1920, on the ground of duress and mutual mistake of fact, and to have it adjudicated that it is unenforceable as an accord and satisfaction between the parties in settlement of certain controversies arising under these previously made contracts for the construction of the ships. The receivers of the United States Steamship Company by intervention became defendants in the suit. They admitted all the allegations of the complaint and prayed for the relief therein asked. The United States Steamship Company was the owner of the outstanding stock of the Groton Iron Works. The answer filed by the Fleet Corporation raised the general issue presented by the complaint and offered two separate defenses, referred to as the first and fourth, with which we are here concerned.

We will consider the "fourth" first, for it raises the question of the proper party defendant. It is claimed in defense that the Fleet Corporation was acting as the sole agent of the United States under the power delegated to it by the President in the Act of June 15, 1917 (40 Stat. 182), and that the United States is therefore the real party in interest, and the argument is that the appellee named assumed no personal liability with reference to the transaction set forth in the complaint. The first separate defense pleads an accord and satisfaction by reason of the contents of article 12 of the contract of March 26, 1920, which gave accord and satisfaction to the appellee of all actions, suits, expenses, and other charges and obligations of the Fleet Corporation prior to that date. The issues were submitted to a special master, who held the first separate defense good and overruled the fourth separate defense. The District Court, on exceptions filed to the master's report, sustained the fourth separate defense and dismissed the bill.

The Urgent Deficiency Bill of June 15, 1917 (40 Stat. 182), authorized the construction of ships not to exceed $500,000,000, and empowered the President to place orders therefor and to exercise the powers conferred through such agency or agencies as he might determine. By executive order of July 11, 1917, the President delegated to the Fleet Corporation the powers thus conferred, in so far as they were applicable to the construction of vessels, and by the further order of December 3, 1918, confirmed such delegation and all acts theretofore done thereunder. By virtue of this authority, the Fleet Corporation, in its name as principal, made three contracts at different times prior to March 26, 1920, with the Groton Iron Works. These contracts referred to the Fleet Corporation as the owner, for whom the vessels were to be constructed, and drew a distinction between the owner (Fleet Corporation) and the United States. The contracts forbade assignment, except upon consent of the Fleet Corporation as owner, but permitted the assignment of payments due or to become due thereunder for the purpose of obtaining

682

credit in furthering their execution. The Fleet Corporation is referred to as a corporation organized under the laws of the District of Columbia, representing the United States of America, party of the second part. ▮ It had been now authoritatively settled that, although in making such contracts the Fleet Corporation was exercising powers derived from the executive orders issued pursuant to the Urgent Deficiency Act for the purpose of carrying out its provisions, it is a principal and responsible as such. Sloan Shipyards Corp. v. United States, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; United States v. Strang, 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368; Dietrich v. Fleet Corp., 9 F.(2d) 733 (2d C. C. A.); Providence Eng. Corp. v. Downey Shipbuilding Corp. (C. C. A.) 294 F. 641. The contracts made were similar to those in the Astoria cases, one of the cases considered with the Sloan Case in 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762. There, as here, the corporation was designated as owner. The undertakings of the contractor in turn ran to the owner, the Fleet Corporation, and not to the United States, and the distinction was made between the Fleet Corporation and the United States. As in the Astoria Case contract, the distinction between the Fleet Corporation and the United States is marked.

A supplementary contract was entered into June 15, 1917, canceling the construction of 4 of the 12 ships covered by the first construction contract, and modified the terms on which the remaining eight were to be built. The Fleet Corporation contracted in the same capacity. No reference is made therein to the United States, and the Fleet Corporation is designated as the owner. It is the owner who is released from all obligations to pay the damages, due to cancellation of the construction of the other ships which were to be built. The contract of March 26, 1920, was supplemental to the preceding contracts and modified the rights and obligations of the parties. It again referred to the United States Shipping Board Emergency Fleet Corporation as a separate corporation organized under the laws of the District of Columbia, representing and acting in respect to all matters therein on behalf of the United States of America. It recited that the contractor had been engaged in constructing vessels for the owner, and that the owner was willing to modify the contract, and provided, among other things, that, for the considerations named, the owner should be released from all existing obligations under pre-existing contracts, and the contractor should

be bound by all valid existing obligations of the then receivers of the contractor to the owner, and that, as against the payment to be made under this settlement contract, the owner should be credited with all payments theretofore made, and forthwith be credited with all proper credits therefor accrued upon pre-existing contract. The contracts were plainly between the Groton Iron Works, as one party, and the Fleet Corporation, as the other. The obligations of the owner released by this settlement contract were the obligations of the Fleet Corporation arising under the contracts, and the payments theretofore made by the owner, for which it was to receive credit, were the payments made under the settlement contracts and were payments made by the Fleet Corporation under existing contracts. The purpose of this contract was to modify the previously existing contracts, made by the Fleet Corporation as principal, to discharge the Fleet Corporation and the contractor from certain obligations credited thereto and to create others in their place. And as such it was executed in the same capacity as were the contracts thus modified, and to which it was supplemental. ▮ As decided in the Sloan Case, this contract was that of the Fleet Corporation, executed by it as principal, and it was not a contract of the United States in its governmental capacity. The theory that the Fleet Corporation was acting as agent for an undisclosed principal is disposed of by the authorities to which we have referred. The cases of Hodgson v. Dexter, 1 Cranch, 345, 2 L. Ed. 130, and Parks v. Ross, 11 How. 362, 13 L. Ed. 730, to which we are referred by the appellee, do not establish that a public agent may not be personally liable for a contract made by him on account of the government, but only that a presumption arises that a public official contracting in behalf of the government, does not intend to bind himself personally. An agent may so contract as to become personally bound. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Thos. Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 528, 537, 100 N. E. 457, 461; Steamship Co. v. Merchants' Transp. Co., 135 Mass. 421. Whatever presumption may arise from the fact that the Fleet Corporation was acting as a governmental agency, it was overcome by the contracts entered into, similar in terms and containing the same characteristics, which were considered in the Sloan Case, supra.

In Fleet Corporation v. Western Union Tel. Co., 275 U. S. 415, 48 S. Ct. 198, 72 L. Ed. 345, which arose under the Post Roads

Act, the act providing that, in consideration of privileges of value accruing thereunder, a telegraph company accepting its provisions, "That telegraphic communications between the several departments of the government of the United States and their officers and agents * * * shall be sent at rates to be annually fixed by the Postmaster General," was obliged to give the privileged rates to the Fleet Corporation. The court pointed out that for 55 years the government rate had been extended to governmental agencies not technically departments of the government. It was an entirely different question than that here for decision as to the liability of the Fleet Corporation upon its own contracts entered into as principal. In United States v. Brown, 247 N. Y. 211, 160 N. E. 13, it was held that, since the moving papers in support of an attachment alleged that the United States was the principal and the real party in interest, the allegations must be assumed to be true on a motion to vacate the attachment. The court below erred in sustaining the fourth defense.

But it is urged that the United States is a necessary party. The case of Providence Eng. Corp. v. Downey Shipbuilding Corp. (C. C. A.) 294 F. 641, considered this question, and upon the satisfactory reasoning of that case we think this contention without merit. The cause of action asserted here is against the Fleet Corporation, because it undertook as principal the obligations of the contracts in suit. The accounting sought by the bill is as to the amount of payments made by the Fleet Corporation under the contract, particularly as to the amounts paid to receivers of the Groton Iron Works while they were in possession of the Shipping Board. While the moneys were originally public moneys, they were turned over to the Fleet Corporation, to be expended as other moneys of the corporation were expended under the deficiency fund provision of the Act of June 15, 1917 (40 Stat. 182).

The supplemental contract of March 26, 1920, released the parties from the obligations and claims prior thereto. The master was sustained by the court below in holding there was an accord and satisfaction, and in his conclusion that the settlement was held free from fraud and misrepresentation. This finding, based upon contradictory evidence, depending upon the credibility of witnesses, is sufficiently supported by credible testimony, and as such we accept it. Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289, Adamson v. Gilliland, 242 U. S. 350, 37 S. Ct. 169, 61 L. Ed. 356. There was no duress nor mistake of fact. Although the parties had been in controversy since April, 1920, there was no suit for rescission of the contract until this bill was filed in July, 1923. The accord and satisfaction is based upon a sufficient consideration given by the respective parties. Since the agreement of release is under seal, it is binding, even if without consideration. Cairo, Truman & So. Ry. v. United States, 267 U. S. 350, 351, 45 S. Ct. 247, 69 L. Ed. 651. The contract recited that its principal purpose was to lift the receivership, restore the plant to the Groton Iron Works, and permit it to continue ship construction and operation of the plant. This was done. The mortgage was extended, and the price of ships was increased. The master found that the appellee paid $250,000 to the creditors of the Groton Iron Works and met pay roll requirements of $100,000 more, as well as various bills for materials. The work of building the ships was not abandoned, but continued.

The contract was in part executed and in part remained executory, and the parties could, by subsequent agreement, modify the part remaining executory, and did not thereby affect the release as to past transactions contained in the contract. Savage Arms v. United States, 266 U. S. 217, 220, 45 S. Ct. 30, 69 L. Ed. 253. But it is urged that a cancellation may be granted. It cannot, if the appellee has given up valuable considerations, which may not now be restored to it. It gave up the continuance of the receivership and expended large sums of money, and relinquished claims against the Groton Iron Works for alleged delay in delivering ships completed before March 26, 1920. One seeking relief by rescission or reformation must do so promptly on discovery of the mistake and must restore the former status. This the appellants have not done before suit, and are unable to do.

Therefore the contract of March 26, 1920, is binding as a release of claims and obligations existing prior to that date. The parties are, however, bound by the terms of the contract, and as to it there should be an accounting between them. There are various claims which should be referred back by the court below, with instructions to have the master pass upon them and report his conclusions to the District Court.

Topping Bros. asked for leave to intervene on behalf of itself and other creditors of the Groton Iron Works similarly situated. This petition was denied. The petition was based upon the claim that the Groton Iron Works and the Fleet Corporation, in the ex-

ecution and administration of the accord and satisfaction of March 26, 1920, committed a violation of their rights as creditors, and that misrepresentations were made to these creditors, which induced them to terminate the state court receivership of the Groton Iron Works, which existed at the time the contract of March 26, 1920, was made. We have held that the contract was free from fraud or misrepresentation, and was freely entered into by the parties. Topping Bros. did assent thereto, and lifted the receivership of the Groton Iron Works, which permitted the making of such contract. But, since its indebtedness had not been paid, it is still a creditor, whose interest, with other creditors, is protected by the trustee in bankruptcy, who represents all creditors. A creditor is not a proper party plaintiff to a suit by the debtor or its trustee in bankruptcy. Atlantic Trust Co. v. Dana et al. (C. C. A.) 128 F. 209, 222. If the object of intervention by petitioners is to assert a new cause of action, any fraud or misrepresentation in causing them to consent to the lifting of a receivership is not available to the trustee in bankruptcy for damages accorded to them for such a wrong, and does not belong to the other creditors. It is an independent claim arising through alleged fraud or misrepresentation. To permit it to make this claim now would be a misjoinder of causes of action, and this is not permitted. Equity rule 37. Hutchinson v. Philadelphia & G. S. S. Co. (D. C.) 216 F. 795.

Decree reversed.