THE CITTA DI PALERMO.

(District Court, S. D. New York. March 28, 1907.)

1. SHIPPING—CARRIAGE OF GOODS—VERBAL CONTRACT FOLLOWED BY BILL OF LADING.

Where a bill of lading does not conform to the original contract of shipment, it must yield, in the absence of proof that the parties intended thereby to create a new agreement.

2. SAME—BILL OF LADING—SIGNING UNDER PROTEST.

Where a bill of lading presented by the carrier to the shipper for signature, after the shipment has been made, does not conform to the original contract, but includes cargo not taken by the vessel as agreed, it is a proper course for the shipper to sign the same under protest, and such protest will preserve its rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 414, 416.]

3. SAME—DEAD FREIGHT—REFUSAL TO TAKE FULL CARGO.

Libelant and respondent entered into a verbal contract that one of respondent's steamers should load and transport a quantity of marble from Spezia, Italy, to New York. The marble was delivered, as agreed, alongside the steamer, which made the voyage with only a part of the cargo, insisting subsequently that libelant's agent should sign a bill of lading for the whole, describing the omitted portion as "short shipped," which bill the agent signed under protest. Held, that libelant was entitled to recover from the steamer the amount exacted in excess of the freight earned, and also the damages suffered by reason of the refusal to take the remainder of the cargo.

In Admiralty.

Wheeler, Cortis & Haight, and Clarence Bishop Smith, and John W. Griffin, for libelant.

Convers & Kirlin, for claimant.

ADAMS, District Judge. This action was brought by the Equi Valley Marble Company, Limited, against Walter F. Becker and the Steamship Citta di Palermo to recover the sum of $189.75, which it claims it was forced to pay to the respondent for the freight on a portion of certain marble he contracted to transport from Spezia, Italy, to New York, which was not actually carried, also to recover the additional sum of $300 as damages for the failure to transport all of the marble in conformity with the contract. The respondent, owner of the steamer, presented no testimony, alleging that he was not ready for trial. He had, however, been given ample opportunity to obtain any foreign testimony that was procurable and it was not considered that he was entitled to further delay. His defence, therefore, rests upon such facts as appear from the libellant's testimony, taken de bene esse, and documents identified therein and by witnesses for him here.

The testimony of the libellant's witness, Mr. Dempster, shows that he was the managing director of the libellant, engaged in quarrying marble and shipping it from Spezia; that in August, 1904, he made a verbal contract with the agent of Becker in Spezia to take 500 tons of marble in September for shipment to the United States at a certain rate, which included the loading, by the respondent's line of which the Citta di Palermo was one; that the respondent sent his vessel to Spezia about September 23, 1904; that the 500 tons were then ready in lighters for delivery alongside the ship; that the steamer took 295½ tons and sailed without the remainder; that a bill of lading was subsequently issued by the steamer and signed by the agent of the libellant at Spezia, one Joyce, which covered the marble actually shipped, also the 204½ tons not taken on board; that the total freight claimed by the steamer was £243.15.9 for marble on board and £99.1.6 for that left behind; that after the steamer took aboard the 295½ tons she left the port and ten days thereafter the respondent presented the bill of lading mentioned to the agent of the libellant for signature, which at first was refused because of the charges contained in the margin for dead freight on the 204½ tons but, after the respondent had refused to modify it, finally signed the bill of lading under a protest, of which the folllowing is a copy:

"We, the Equi Valley Marble Company, Limited, in the name of our responsible agent, Hilles Tally Dempster, resident at Spezia, Italy, do hereby protest against the action of one Becker, Quirola and Giacopini in causing to be issued and forcing the Company to accept inaccurate Bills of Lading covering a consignment of marble shipped by the Company and carried by the 'Citta di Palermo' from Spezia to New York and notice is hereby given that the Equi Valley Marble Company, Limited, will hold the said Becker, Quirola, Giacopini and their agents severally and jointly responsible for all loss or damage which may result from their action.

Signed for the Equi Valley Marble Company, Ltd.

by H. T. Dempster,
General Manager.

Spezia, Italy, October 15th, 1904."

Mr. Dempster further testified that the libellant was forced to sign the bill of lading in order to get the merchandise in the public stores in New York to save storage. It is urged by the respondent that it was not necessary to have the bill of lading for such purpose; that all the rights of the libellant could have been preserved without it and any controversy for the possession of the goods determined in an action instituted to achieve that end. The protests were, however, simple and natural courses for the libellant to pursue under the circumstances and I think preserved its rights incident to the failure of the vessel to take all the goods the respondent agreed to carry and the payments exacted on his account before the libellant could obtain possession of its goods in New York. Under the contract, it was the duty of the vessel to load the marble with its own appurtenances, and it, not the libellant, was responsible for the delay in loading and for the damages suffered by the libellant by reason of some of the shipment not being taken on board.

The respondent relies upon the bill of lading as a defence but a document of that character does not suffice to bind the parties to it

where it does not correctly represent the facts.    This bill of lading was not the original contract between the parties but in a case of this kind merely evidence of it.    Here an oral agreement for the carriage of the marble was first made in the expectation doubtless that a bill of lading would confirm it, but it did not.    Where the bill of lading does not conform to the original contract, the former must yield in the absence of proof that the parties intended thereby to create a new agreement. It was said by Judge Brown in Crenshawe v. Pearce (D. C.) 37 Fed. 432, 434:

> "The bills of lading are not, as the libellants contend, the only contracts between the parties.    Even if they had been regularly issued, they would only have been in execution of the previous contracts of affreightment, which provided that bills of lading should be given.    The bills of lading stand in the same relation to the original contracts of affreightment that bills of lading hold to the charter-parties under which they have been given.    In the latter class of cases it has been long settled, not only that the bills of lading do not supersede the provisions of the charter-party in so far as they differ from it, but that they are controlled by the charter-party, in the absence of any proof of authority and intention to make a new contract.    1 Pars. Adm. 286; The Chadwicke (D. C.) 29 Fed. 524, and cases there cited; Ardan v. Theband (D. C.) 35 Fed. 620."

Here the signature to a bill of lading was obtained from the libellant after the goods were shipped, when its agent was under the impression that the bill of lading would be required in New York to obtain possession of the goods and he therefore signed it under a written protest, in confirmation of a previous verbal one, after the vessel's owner had refused to strike out the objectionable matter.    This was a species of duress sufficient to coerce the libelant into signing and I do not think the respondent is now entitled to take advantage of it.

There will be a decree for the libellant, with an order of reference.