## UNITED STATES v. FISHER FLOURING MILLS CO. et al.

(District Court, W. D. Washington, N. D.    February 8, 1924.)

No. 6442.

**1. Shipping ⊕⊃39, 106—Charter; effect of difference between charter party and bill of lading.**

The general rule that, as between vessel owner and charterer, when the bill of lading does not conform to the charter party as to the rate, the former must yield, is subject to exception, where there is proof that the parties intended thereby to make a new agreement.

⊕⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Injunction ⬡250—Allegation in answer in action on bond held pertinent.**

In an action on an injunction bond, an allegation in the answer that the injunction was issued too late to have any operative effect *held* pertinent, at least on the question of damages.

3. **United States ⬡130—Set-offs against government must have been presented to Treasury Department.**

In a suit by the United States on a cause of action assigned to it by the Fleet Corporation, defendant *held* not entitled to plead as a set-off claims against the Fleet Corporation which have not been presented to the accounting officers of the treasury as required by Rev. St. § 951 (Comp. St. § 1588).

At Law. Action by the United States against the Fisher Flouring Mills Company and others. On demurrer to affirmative defenses in answer. Sustained in part, and overruled in part.

Thos. P. Revelle, U. S. Atty., of Seattle, Wash., MacCormac Snow, of Portland, Or., and Charles E. Allen, of Seattle, Wash., for plaintiff.

Hastings & Stedman, of Seattle, Wash., for defendants.

CUSHMAN, District Judge. The complaint herein alleges that in 1920, at Seattle, a Fleet Corporation vessel was chartered by the Corporation to the defendants, Fisher Flouring Mills and the White-Dulany Company, for the carriage of grain to Europe, at the rate of $20 per ton; that after the loading of the vessel a bill of lading was issued, covering the shipment, at the recited rate of $18 a ton; that the agent of the Fleet Corporation and these two defendants undertook to arbitrate the question of the proper freight rate; that the arbitrators found the proper rate to be $20 a ton, and found defendants liable therefor; that the defendants thereafter brought suit in the state court against the Fleet Corporation and its agent, to enjoin the collection upon the arrival of the vessel at Antwerp of any amount in excess of the $18 rate, in which suit a bond was given by the plaintiffs therein and the bonding company, defendants in the present suit; that by the bond the obligors bound themselves to save harmless the obligees in the event it should be adjudged the restraining order was improperly issued, and that they would pay and discharge any judgment adjudged against plaintiffs, together with costs; that because of the restraining order the collection of the $20 rate was prevented, and the cargo delivered to representatives of the defendants in the present suit at Antwerp. The suit was removed to this court, and upon motion of plaintiffs thereafter dismissed; they at the same time filing a "declaration respecting bond" to the effect that the bond was given to fully indemnify each of the defendants in that suit in the event it was adjudged that the restraining order was improperly issued.

The cause of action upon the bond has been assigned to the United States, the plaintiff herein. Defendants have answered, alleging that the charter party was amended, changing the loading date, authorizing collect freight, and granting rates as at the time of loading; that, the vessel not being delivered according to the terms of the charter party, defendants canceled their agreement, notifying the Shipping Board

and its agent, from whom the charter had been received; that without defendants' consent thereafter a substituted vessel was berthed at the dock named in the charter party; that at that time the prevailing rate for freight was $18 a ton; that the defendants refused to allow the vessel to be loaded; that it was then agreed between the defendants and the Shipping Board that the rate should be $18, and a bill of lading to that effect was issued; that the same was an order bill of lading, and the master had no right to demand a greater rate than $18, and that no loss was occasioned by reason of the restraining order. To this defense the plaintiff has demurred.

[1] As between the vessel owner and the charterer, the general rule is that, when the terms of the charter differ from those of the bill of lading, the charter party controls, and the bill of lading will, as between them, be treated as a receipt for the cargo delivered on board under the terms of the charter party. Citation of authority is not deemed necessary. An examination of the cases so holding shows, however, that the decisions were made upon evidence taken, and not upon exception or demurrer, and further shows such decisions to have been in cases where the terms of the bill of lading, an instrument presumably made by the representative of the ship or shipowner, were more favorable to the shipowner than to the charterer. The rule to be applied in the present suit comes within a recognized exception to the general rule:

"Where the bill of lading does not conform to the original contract, the former must yield, in the absence of proof that the parties intended thereby to create a new agreement." The Citta Di Palermo (D. C.) 153 Fed. 378, 380.

According to the reported cases, Judge Brown appears to have considered this question more frequently than any other of our judges. He held as indicated in the foregoing case "in the absence of any proof of authority and intention to make a new contract." Crenshawe v. Pearce (C. C.) 37 Fed. 432, 434. The demurrer to this defense will be overruled.

[2] Defendants further allege that prior to the giving of a bond or issuance of a restraining order the captain had, pursuant to instructions of the Shipping Board, delivered the cargo and collected freight thereon at the $18 rate, and that it was not so done because of the restraining order. The voluntary dismissal of the injunction suit by defendants in the present suit, who were plaintiffs in that litigation, possibly is res adjudicata of the wrongful issuance of the injunction. It is not, however, res adjudicata of the amount of damage sustained on account of such injury. The demurrer will be overruled to this defense.

[3] By way of set-off, defendants assert in their fourth and fifth affirmative defenses certain items of damage claimed to have been suffered by them on account of shipments upon other vessels of the Fleet Corporation alleged to have been unreasonably delayed. The ground of plaintiff's demurrer to these asserted set-offs is that there is no allegation that defendants have complied with section 951, R. S. (section 1588, Comp. St.). In the Sloan Shipyard Case, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762, it was decided that, while the Emergency

Fleet Corporation was an agent of the United States, it was not because of that fact itself immune from suit, nor immune from responsibility for its torts. In the suit of Fleet Corporation v. Wood, Trustee, 258 U. S. 549–570, 42 Sup. Ct. 386, 66 L. Ed. 762, where a claim of the Fleet Corporation was presented in bankruptcy "in its own name," asking priority of payment because it was an instrumentality of the government, it was held not entitled to such priority, "whatever might be the law as to a direct claim of the United States."

While the Fleet Corporation assigned to the United States, plaintiff herein, its cause of action, the present suit is "upon a direct claim of the United States," as the foregoing expression is used, by the Supreme Court. Section 951, R. S. (section 1588, Comp. St.) provides:

"In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the accounting officers of the treasury, for their examination, and to have been by them disallowed in whole or in part, unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States or by some unavoidable accident."

The answer does not bring the asserted set-off within the exceptions mentioned in the statute. The statute itself does not disclose the purpose of Congress in prohibiting, in a suit by the United States, a set-off except where the credit claimed has been presented to the accounting officers of the treasury and been by them disallowed. The Supreme Court, however, in Cox v. United States, 6 Pet. 172–202, 8 L. Ed. 359, said:

"The law was intended for real and substantial purposes; that the United States should not be surprised by claims for credits, which they might not be able to meet and explain in the hurry of a trial. But as no new credit was asked in this case, it would have been useless to make any application to the treasury, for the mere purpose of being refused."

It may be that Congress also intended that the accounting officers of the United States, if upon investigation of the claim asserted as a set-off it was found to be meritorious, should have an opportunity to adjust the differences and save the United States the expense of litigation.

The demurrer to the fourth and fifth affirmative defenses will be sustained.