### UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. BANQUE RUSSO ASIATIQUE, LONDON.

(Circuit Court of Appeals, Third Circuit.   February 17, 1923.)

No. 2913.

1. **United States ⬥125—Fleet Corporation can be libeled in personam, without proceeding under Suits in Admiralty Act.**

   A libel in personam may be maintained against the United States Shipping Board Emergency Fleet Corporation, and the moneys of the corporation attached, though a libel in rem against the ship could not be maintained, under the Suits in Admiralty Act of March 9, 1920, since the Emergency Fleet Corporation is subject to suit, just as is any other corporation of the District of Columbia.

2. **Admiralty ⬥12—Controversy as to right to demurrage under bill of lading is within admiralty jurisdiction.**

   A controversy as to the right of the vessel to demurrage for delay in unloading the cargo, the decision of which necessitates a construction of the bill of lading, a distinctively maritime contract, is within the jurisdiction of admiralty.

3. **Shipping ⬥177—Demurrage not chargeable for delay before ship was ready to unload, or thereafter, due to improper demand for demurrage.**

   A ship is not entitled to demurrage before the time she was ready to unload, nor after that date, where the delay was largely occasioned by the improper demand of the ship's agent for payment of the freight charges and demurrage before the discharge of the cargo, especially where the ship had a right under its bill of lading to discharge its cargo into lighters or on the dock at any time.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Admiralty libel in personam by the Banque Russo Asiatique, London, against the United States Shipping Board Emergency Fleet Corporation. Decree for libelant (281 Fed. 886), and respondent appeals. Affirmed.

See, also, 266 Fed. 897.

J. Frank Staley, of Washington, D. C., and George W. Coles, of Philadelphia, Pa., for appellant.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before WOOLLEY, Circuit Judge, and WITMER and GIBSON, District Judges.

GIBSON, District Judge.   The present case is an appeal from a decree in admiralty.   No dispute exists as to certain of the facts.   The steamship Kittegaun, owned by the United States and operated by the Export Steamship Corporation of New York for the appellant, arrived at the port of Philadelphia on February 26, 1920, at 5 p. m., with a cargo consisting, in part, of 3,100 tons of peroxide of manganese ore consigned to the appellee.   On the following day she was entered at the custom house, and late on February 28, 1920, at 5 p. m., she docked at Point House Pier, Philadelphia.   This day was Saturday, and no steve-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dores were available to unload the ship on that or the following day. The consignee of the ore was unknown, and no one appeared to receive it. The ship's agent, by reason of insufficient inquiry or appeal for information to the wrong persons, was of the opinion that the ore could not be unloaded into open lighters or upon the open dock without injury to it, and therefore did not order it to be so unloaded, as he might have done under the provisions of the contract of shipment. The ore was not taken from the ship until March 8, 1920, when it was unloaded into open lighters.

However, on March 1, 1920, the Fourth Street National Bank appeared for the consignee; but, due largely to the demands of the ship's agent for the immediate payment of the freight and demurrage, the unloading did not begin until March 8th, as stated before. Before he would allow the cargo to be unloaded, the ship's agent required the consignee's agent to pay, in advance, the sum of $32,775 as demurrage. This amount was paid under protest, and after payment the consignee immediately filed its libel in personam, with attachment, for the recovery of the sum so paid, with interest from March 9, 1920. In due time the cause came on to be heard before the District Court of the United States for the Eastern District of Pennsylvania, which court, on June 27, 1922, filed its decree, wherein it gave judgment in favor of the libelant for the sum of $32,775, with interest thereon from March 9, 1920. The present case is an appeal from that judgment.

The appellant has raised two jurisdictional questions, not raised in the court below. It alleges (1) that actions against the Emergency Fleet Corporation upon matters involving its relation to the operation of government-owned tonnage must be brought under, and in compliance with, the provisions of the Suits in Admiralty Act of March 9, 1920 (41 Stat. 528); and (2) that the claim is for money had and received, and is not within the admiralty jurisdiction.

[1] If the libel had been in rem against the Kittegaun, the first of these contentions of the appellant would be well-founded, perhaps, and the libel would have to be dismissed. But the libel was in personam, not in rem, and the attachment was of the moneys of the Emergency Fleet Corporation, not of the United States. The Emergency Fleet Corporation is subject to suit, just as is any other corporation of the District of Columbia. Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. ——. The Suits in Admiralty Act was passed to meet a different situation than is presented by the case at bar. As we view the matter, the libelant was not limited to a libel in personam against the United States or the Emergency Fleet Corporation, under procedure as prescribed by the Suits in Admiralty Act, but was entitled to begin its action by libel and foreign attachment, pursuant to rule 2 of the Supreme Court Admiralty Rules (267 Fed. vii).

[2] Nor do we agree with appellant's contention that the claim is not within the admiralty jurisdiction. A decision of the matters in dispute between the parties necessitates a construction and review of the terms of the bill of lading, a distinctively maritime contract. From time immemorial the construction of such contracts, and the determi-

nation of issues arising out of them, has been part of the duties of courts of admiralty.

[3] Having mentioned such questions as to jurisdiction as seemed to require notice, we come to the main issue: Was the ship's agent justified, under the facts shown, in demanding and receiving the sum of $32,775 as demurrage from the consignee? This phase of the case requires little discussion, because we find ourselves quite in accord with the findings of fact and results attained by the learned judge of the District Court who heard the matter. 281 Fed. 886. The Kittegaun was not ready to unload prior to March 2, 1920, and after that date the delay was largely occasioned by the ship's agent, who improperly demanded the payment of freight and demurrage before the discharge of the cargo. Being satisfied as to the foregoing facts, there is, perhaps, no need of remark that no actual need of delay existed from first to last, as the ship, under the bill of lading, might have discharged its cargo of ore into lighters or upon the dock at any time during the interval between March 1 and March 9, 1920.

The decree of the District Court is hereby affirmed.