### STEWART v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, E. D. New York. August 28, 1925.)

1. Seamen ⊚═29(5)—Evidence held to sustain finding that deafness of steward was caused by exposure while obeying orders of vessel's master.

Evidence held to sustain finding that deafness of steward was caused by exposure to cold, while attempting to obey orders of master to go ashore from icebound vessel and purchase and bring supplies aboard.

2. United States ⊚═52½, New, vol. 19A Key-No. Series—Failure of libelant to disclose that United States was undisclosed principal held not to preclude suit against Fleet Corporation.

Where vessel was requisitioned by the United States through the Shipping Board, under authority of Urgent Deficiencies Act, June 15, 1917, and executive order of July 11, 1917, failure of libelant to disclose that United States was undisclosed principal held not to preclude action against Emergency Fleet Corporation for injuries resulting from obeying orders of master.

3. Principal and agent ⊚═145(4)—Right to sue agent not lost because suit not brought against undisclosed principal also.

Right to sue an agent is not lost simply because it is not also brought against undisclosed principal.

4. Seamen ⊚═29(1)—Fact that vessel is victualed, manned, and controlled by any person may fix liability of that person as charterer.

In view of Rev. St. § 4286 (Comp. St. § 8024), fact that vessel is victualed, manned, and controlled by any person may fix liability of that person for injuries to seamen as charterer and owner of ship pro hac vice.

5. United States ⊚═52½, New, vol. 19A Key-No. Series—Emergency Fleet Corporation not immune from suit because stock thereof owned by United States.

Fact that entire capital stock of Emergency Fleet Corporation was owned by the United States did not make it immune from suits on its contracts.

6. United States ⊚═52½, New, vol. 19A Key-No. Series—Suit held properly brought against Emergency Fleet Corporation without making United States, as owner of vessel, a party.

Suit by steward for injuries, received while obeying orders of master of icebound vessel to go ashore for provisions, held maintainable against Emergency Fleet Corporation without making United States, record owner of vessel, a party.

7. Seamen ⊚═29(2)—Failure to furnish ample provisions for voyage rendered ship unseaworthy and owner responsible for damages resulting therefrom.

Failure of vessel to furnish provisions for crew for more than 6 or 7 days before starting on voyage from Quebec to New York, under prevailing conditions as to ice and temperature, held to render ship unseaworthy, and, for any damages resulting therefrom to steward, Emergency Fleet Corporation was liable.

8. Seamen ⊚═29(1)—Vessel bound to indemnify steward for injuries suffered by him in obeying orders.

Master of icebound vessel could not allow crew to starve, and had right to order steward to cross ice to procure provisions, and Fleet Corporation was bound to indemnify him for injuries suffered thereby.

**9. Seamen ⬡⟳29(4)—Failure of steward to properly clothe himself for journey from icebound vessel held negligence contributing to injury.**

Failure of steward, in executing orders of master to go ashore from icebound vessel to procure provisions for crew, to properly clothe himself and protect his face and ears against cold, *held* to constitute negligence which contributed to his injuries.

**10. Equity ⬡⟳88—Laches as defense must be specially pleaded.**

Laches as a defense must be specially pleaded.

**11. Seamen ⬡⟳29(5)—Limitation of Suits in Admiralty Act, March 9, 1920, § 5, held inapplicable.**

Suit against Emergency Fleet Corporation by steward, for personal injuries resulting from obeying orders of master to go from icebound vessel to procure provisions for crew, *held* not subject to limitation imposed by Suits in Admiralty Act, § 5 (Comp. St. Ann. Supp. 1923, § 1251¼d).

**12. Seamen ⬡⟳29(4)—$6,500 for permanent loss of hearing of steward of vessel held proper.**

In view of negligence of steward in not properly clothing himself for trip from icebound vessel to shore for provisions, and in view of decrease in earning power and inability to continue as chief steward, $6,500 damages for total loss of hearing *held* proper.

In Admiralty. Libel by Samuel K. Stewart against the United States Shipping Board Emergency Fleet Corporation. Decree for libelant.

Silas B. Axtell, of New York City (Berry Sturgeon, of New York City, of counsel), for libelant.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Frederick H. Cunningham, of New York City, of counsel), for respondent.

CAMPBELL, District Judge. The libelant was, on the 5th day of December, 1917, employed for respondent by the port steward of the respondent, at New York, at the rate of $100 per month and board and lodging, to go as chief steward of the steamship Cicoa. Libelant's transportation from New York to Quebec was advanced by the respondent. The libelant signed articles with the respondent, at New York, to go by rail to Quebec, there join the vessel, and come with her to New York, wages to start leaving New York.

On December 7, 1917, having joined the ship at Quebec, he as such chief steward submitted to the assistant port steward of the respondent at Quebec, personally, a list of requisition of stores for such ship for 30 days' provisions, but said assistant port steward declined to permit him to have 30 days' provisions, and allowed him provisions for only 14 days. This was the amount of provisions customarily furnished when navigation was open; no emergency rations being supplied.

While waiting for an opportunity to get through the ice which had formed in the St. Lawrence river, the crew were eating the provisions. A few days after the provisions for 14 days were put aboard, the then master, Barrett, attempted to make the voyage, went out to sea about 10 miles, when, the ice having piled up on his bow to such an extent that it was apparently dangerous to make a further attempt to go through the ice, he turned the vessel around and brought her back to the dock.

A new master was sent up from New York, and he ordered 7 days' more supplies, which, with those ordered before, made 21 days' supplies, and would, under ordinary conditions, have been sufficient to feed the crew until December 27th or 28th.

The new master agreed to notify the libelant in time to obtain 14 days' supply before the vessel sailed, but he failed to give him such notice, and on December 21, 1917, the ice breaker being ready, the vessel put to sea with but 6 or 7 days' supply of provisions on board; the libelant not having had sufficient notice of sailing to obtain more provisions.

The ice breaker was able to proceed but a mile or so, whereupon her master told the master of the Cicoa he would have to give it up, and asked the master of the Cicoa what he was going to do, and he said he was going to New York. The Cicoa was soon fast in the ice, the temperature being 20 degrees below zero.

On January 31st, the vessel having made but little progress from her starting point and being fast in the ice, her supplies were nearly exhausted. The ship was then 4 or 5 miles from the shore, and, as there seemed to be solid ice between the ship and the shore, the master gave the libelant money and ordered him to go ashore and purchase provisions. The testimony shows that, if the libelant did not volunteer, he at least yielded willing obedience to the order; but in any event he went on the order of the master.

Libelant requested that a navigating officer be sent with him, and his request was granted. Libelant with the third officer and three seamen started for the shore early on that

morning, but the libelant did not take any special precautions as to his clothing, for what he must have known would be a journey which would expose him to severe cold. The temperature, as he said, was then 20 degrees below zero, and he wore only the clothes he customarily wore. After great difficulty and the hardest kind of traveling over broken ice, in severe cold, they reached the shore, and purchased a quantity of such provisions as they could procure.

The crew of the vessel was 36 or more men, and the master had directed them on starting out to hurry at all costs. About 2:30 o'clock they started to return, and, after great exertion in the severe cold, they were unable to make the ship, and returned to shore. For several days they each day made an attempt to reach the vessel, whose position was changing, and failed. The libelant suffered severely from the cold; his face and ears being frozen.

Finally they located the ship tied to a rock near the beach, about 9 miles from the farmhouse to which they went when they first landed, and delivered the provisions they had obtained.

The Cicoa proceeded and made stops, arriving finally at New York, where she paid off on February 19, 1918. All the expenses of the ship and wages of the crew were paid by the respondent.

From the uncontradicted evidence of the libelant's witness, I find that the libelant is totally deaf, and that this condition will be permanent.

[1] From all the evidence in this case, I find that the deafness from which libelant is suffering was caused by the exposure to the cold, while attempting to obey the orders given by the master on January 31, 1918, to go ashore and purchase and bring supplies aboard the Cicoa.

[2] The steamship Cicoa was a vessel which had been requisitioned from the Charcoal Iron Company of America, by the United States of America, through the United States Shipping Board, acting under the authority of the Urgent Deficiencies Act of June 15, 1917 (40 Stat. 182), and the President's executive order of 11th July, 1917.

Neither the United States Shipping Board nor the United States of America were made parties to this suit, and this suit is not brought in rem but in personam, and only against the respondent.

The evidence shows that the Cicoa was requisitioned by the United States of America, through the United States Shipping Board, and not through the respondent.

[3] No agreement of any kind under which the respondent was operating the steamship Cicoa was offered in evidence, and, while it may have been acting as agent for the United States Shipping Board and the United States of America, and if that evidence had been offered the United States of America might have been made a party, yet I can see no force to respondent's claim that this action cannot be maintained against the respondent because libelant has failed to disclose that the United States of America was an undisclosed principal. The right to sue an agent is not lost simply because the suit is not also brought against an undisclosed principal.

[4] The evidence shows that the respondent furnished the crew who signed articles with the respondent, and also furnished the supplies, paid all the expenses of the voyage, furnished the master, and directed the movements of the vessel; therefore, it seems to me that under the maritime law the respondent might be considered as a charterer, and was acting as owner of said ship pro hac vice.

Section 4286 of the Revised Statutes (Comp. St. § 8024) reads as follows: "The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this title relating to the limitation of the liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof."

While this provision of statute may not be wholly determinative, the fact that the vessel is victualed, manned, and controlled by any person seems to fix the liability of that person. Reed v. United States, 78 U. S. (11 Wall.) 591, at page 600, 20 L. Ed. 220; Everett v. United States (D. C.) 277 F. 256; Scarff v. Metcalf et al., 107 N. Y. 211, 13 N. E. 796, 1 Am. St. Rep. 807.

[5] The entire capital stock of the respondent is owned by the United States of America, but that does not make the respondent immune from being sued on the contracts made by it. Sloan Shipyards v. U. S. Fleet Corp., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; The Kittegaun (C. C. A.) 1923 A. M. C. 387, 286 F. 918.

[6] If the respondent was only an agent of the United States of America, and without personal liability, that could easily have been shown by the respondent, which must have had the evidence in its possession or could have obtained it from the government,

while the libelant was without knowledge of any such agency, and had the right to look to his employer, the respondent, with whom he had signed articles, who, so far as he could observe, was paying the charges and directing the movements of the vessel. I therefore conclude that the libelant had a right to bring the action against the respondent, without making the United States of America, the record owner of the vessel, a party.

[7] The failure to furnish provisions for the crew for more than 6 or 7 days before the vessel started on her voyage from Quebec to New York, under the conditions that prevailed as to ice and temperature, rendered the ship unseaworthy, and, for any damages resulting therefrom to libelant, the respondent was liable.

That the ship was not furnished with sufficient supplies appears even from the testimony of the assistant port steward of the respondent, at Quebec, who testified that in fair weather 10 days' provisions were customarily allowed, and that on December 7, 1918, when the libelant first applied for provisions for the voyage, approximately 16 days' provisions were allowed because of the ice and the weather conditions.

[8] The master could not allow the men to starve, and had a right to order the steward, the best qualified man on the ship to purchase food, to cross the ice and endeavor to procure provisions, and respondent was bound to indemnify the libelant for any injuries suffered by him in obeying that order. Whether the respondent has any property from which libelant can obtain payment of indemnity, if any be found to be due him, is no concern of this court at this time.

[9] No order seems to have been given to the libelant as to the manner in which he was to clothe himself for the expedition, but he knew the thermometer showed 20 below zero, and he must have known the danger of being subjected to such a degree of cold without being clothed in heavy clothing, and some protection provided for his face and ears. His failure to properly clothe himself and protect his face and ears against the cold constituted negligence, and contributed to his injuries.

[10] The exposure from which the libelant suffered, which caused the loss of his hearing, occurred over 7 years ago, but no defense of laches was interposed, and, as that is a defense which must be specially pleaded, it cannot be considered.

[11] Respondent did plead, as a special defense, the Suits in Admiralty Act, March 9, 1920 (41 St. at L. 525, c. 95 [Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l]), and contends that, under its plea of the whole act, it pleaded the limitation of time within which actions could be brought, as provided in section 5 (section 1251¼d) as one year after March 9, 1920, and that, as the instant suit was not commenced until June 7, 1923, it was barred by that act.

I cannot agree with the respondent's contention, because the instant suit was not brought against the United States of America, but against the United States Shipping Board Emergency Fleet Corporation, a District of Columbia corporation, and in my opinion the said Suits in Admiralty Act does not apply, as it seems to me that, where the government engages in strictly private business, through the agency of a private corporation, the tendency is to restrict rather than enlarge its immunity from suit, and I cannot better express my opinion on this subject than was done by District Judge Partridge, in The West Aleta (D. C.) 1924 A. M. C. 170, 295 F. 372. I therefore hold that this action is not barred by the limitation of time for commencing actions contained in the said Suits in Admiralty Act.

[12] While the libelant was bound to obey the orders of the master, and go for provisions, he was also bound to use the ordinary care and precaution which a reasonably prudent man could be expected to use to protect himself as far as he was able, against the extreme cold to which he knew he was to be subjected. This he did not do in going forth clothed in his ordinary clothes, as described by him, but by so doing he contributed to his injury, and I have considered this fact in my determination of the amount which should be awarded to him.

The decrease in the earning power of the libelant is apparent, as is his inability to continue as a chief steward, and under his expectancy of life as shown by the table, his financial loss will be considerable. Some of the claims as to what might be expected to be his earnings seem to be highly speculative and dependent upon conditions other than his ability. There is no doubt, however, that he has undergone pain and suffering, and will continue to suffer from his injury, which is permanent.

A decree may be entered in favor of the libelant against the respondent for the sum of $6,500, with costs.