**BACCARAT v. ANDREW F. MAHONEY CO. et al.**

No. 21145.

District Court, N. D. California.

Aug. 7, 1933.

S. T. Hogevoll, of San Francisco, Cal., for libelant.

John H. Black and James M. Wallace, both of San Francisco, Cal., for respondents.

NORCROSS, District Judge.

This is a libel in personam brought to recover damages or indemnity in the sum of $5,000 and for maintenance in the sum of $700 for the period of time libelant claims he was unable to work. The ground of recovery is based on the alleged negligence of the master of the vessel Frank D. Stout in refusing libelant a "hospital slip," which he alleges would have entitled him to medical treatment at the United States Marine Hospital in San Francisco.

Libelant alleges in substance that at the times set out in the libel the Andrew F. Mahoney Company was the managing owner of the vessel Frank D. Stout; that on or about October 4, 1927, libelees were the owners and operators of said vessel; that on said date libelant entered the service of said libelees in the capacity of fireman; that on or about November 13, 1927, while so employed, he contracted leprosy without fault on his part; that he did not know he had leprosy, but showed the master of the vessel a red infection about an inch in diameter with small pimples on the right side of his face, which was the beginning of the disease, and asked for a slip to go to the Marine Hospital, which was refused; that he was not able to remain on the vessel by reason of said infec-

tion, and quit and went to the United States Marine Hospital at San Francisco, but was refused admission because he had no pass or slip; that said leprosy became more severe, and on or about August 24, 1928, he was ordered by the United States Public Health Service at the Marine Hospital in San Francisco to go to the United States Marine Hospital at Carville, La., where he remained from August 24, 1928, to December 3, 1931, at which time he was discharged as cured. The libel was filed August 5, 1932.

Libelees deny that they were the managing owners of the vessel Frank D. Stout, and allege that it was being operated under charter parties; that they had nothing to do with its operation or control, and did not hire or pay either libelant or the master; that the relationship of employer and employee did not at any time exist between the parties to this action; that the injuries or damages libelant claims to have sustained were not caused by any negligence on their part. Libelees further allege that the claims are barred by laches. Libelant contends that the matter of laches was finally disposed of by an order of this court overruling respondents' exceptions to the libel.

Libelant does not contend, nor is there any proof, that he contracted leprosy by reason of any negligence. It appears from the testimony that no one, including libelant, knew that he had leprosy until the disease was so diagnosed on August 6, 1927. The testimony shows that he was examined by several doctors on the day and also a few days after he left the vessel, and, when it was eventually suspected to be leprosy, he received treatment without expense to himself until he was discharged from the United States Marine Hospital at Carville, La., on December 3, 1931.

Libelant introduced in evidence a "Certificate of Discharge," dated December 2, 1931, issued for a 6-month period, from the United States Marine Hospital at Carville, La., showing that he was treated in said hospital from July 25, 1929, to December 3, 1931. The "Reason for Discharge" is stated as "Leprosy, arrested, and no longer a menace to public health." Said certificate is signed by the medical officer in charge of the hospital, and is also renewed and countersigned—as required by the certificate—by the secretary of the state board of health, each 6 months for a period of 3 years after the date of discharge, stating libelant was "examined and find no evidence of recurrence."

To interrogatories propounded by the libelee Andrew F. Mahoney Company, libelant replied that he first noticed the red infection on his face on November 11, 1927, and 2 days later called the same to the attention of the master when the vessel had docked at San Francisco, at which time he requested a hospital slip from the master; that he quit the service of the vessel at San Francisco on November 13, 1927; that he was refused admission to the Marine Hospital on November 13, 1927, and again on December 6, 1927, on which latter date he again requested a hospital slip from the master; that on his first visit to the Marine Hospital he saw Drs. Jones, Petch, Miller, and Hart; that he first learned that he had leprosy on August 6, 1927, at the San Francisco County Hospital.

While the testimony of medical experts was not in entire accord that libelant was afflicted with leprosy, all who testified on the subject were in agreement that the period of incubation for leprosy was from 2 to 15 years. As libelant was on the vessel for less than 6 weeks when the first symptoms appeared, he could not have contracted the disease while in the vessel's service.

■ The only act of negligence alleged is the failure of the master of the vessel to furnish a hospital slip. Assuming such slip was refused, libelant has not thereby established any actionable negligence on the part of the master. Libelant's own witnesses testified that the so-called "hospital slip" was only one of five ways in which he could obtain treatment at the United States Marine Hospital. The testimony of Dr. Campbell, a witness for libelant, who was in charge of the Out-Patient Clinic at the United States Public Health Service, was to the effect that libelant did not require a master's certificate for entrance to the Marine Hospital or United States Public Health Service, and that he was not refused admittance because of his failure to have such certificate; that such service and treatment were available to him upon showing that he was a seaman, and there were five different ways that he could and would have been admitted to the hospital had he been entitled to receive treatment at that institution, and the only reason further treatment was refused was because he had not had 60 days' continuous service upon the vessel to his credit.

■ Dr. Hart, a physician in the employ of the United States Public Health Service, and one of the physicians whom libelant saw on November 13, 1927, the day libelant left the ship, was called as a witness by libelant. The doctor testified to an extended study of and experience with leprosy in the Orient, where he was engaged by the national gov-

ernment in his professional capacity. He estimated the number of cases he had examined as between eight and ten thousand. The witness had returned from his trip to the Orient only shortly prior to the trial of this cause. While the doctor expressed some doubt as to whether libelant's infection was leprosy, he was positive in his statements that, if leprosy, the type of the disease was neither painful nor disabling, and that libelant could have continued with his work until such time as the disease was definitely determined; that recovery would not have been any more prompt had the diagnosis been made at an earlier date.

■■ The evidence is without conflict that at all times while libelant was employed on the Frank D. Stout she was being operated under charter parties. Libelees herein had nothing to do with her operation or control. They did not employ or pay either the libelant or master. The relationship of employer and employee did not at any time exist. The vessel was bought on May 2, 1927, from the California Oregon Lumber Company by the respondents herein (who own a 66 per cent. interest), and various other persons named in the libel as respondents, but who were not served with process and have not appeared herein, subject to a charter party which had been executed by the California Oregon Lumber Company to Daugh's Ship Crane Company prior to the purchase of the vessel. In October, 1927, a new charter party was executed by the respondent Andrew F. Mahoney Company, as managing owner, to the Finkbineguild-Lumber Company, which continued in force until long after libelant left the service of the vessel. Both these charter parties are in evidence, and show by their terms that the charterers took over the complete control of the vessel, and the only way in which the owners remained interested was in receiving the specified payments of $75 per day for charter hire. The charter parties had the entire command, possession, and control of the vessel, and as such were in the position of owner pro hac vice. As held by the Circuit Court of Appeals in The Del Norte, 119 F. 118, the master of a vessel is not regarded as the agent of the owner during the life of the charter party. The following authorities support the same view: The Dutchess (D. C.) 16 F.(2d) 1003; Stewart v. United States Shipping Board (D. C.) 7 F.(2d) 676; The Charlotte (C. C. A.) 299 F. 595; Hills v. Leeds (D. C.) 149 F. 878; Golcar S. S. Co., Ltd., v. Tweedie Trading Co. (D. C.) 146 F. 563; American Steel-Barge Co. v. Cargo of Coal (D. C.) 107 F. 964; Posey v. Scoville (C. C.) 10 F. 140.

Libelant is not entitled to recover in this cause. Independent of the question of nonliability by reason of the charter parties, there is an entire lack of evidence respecting damages or indemnity. The evidence also is insufficient to support a recovery for maintenance.

Libelees are entitled to their costs of suit herein incurred. Decree is directed to be entered accordingly.